## A92A0998. PERRY v. THE STATE.

(419 SE2d 922)

Birdsong, Presiding Judge.

James William Perry appeals from his judgment of conviction of DUI and habitual violator, the denial of his motion for new trial, and the sentence. He claims that the trial court erred in denying his motion for new trial on three separate grounds. *Held*:

1. We note that certain assertions of fact are contained in appellate briefs which are not supported by evidence of record. Such assertions will not be considered on appeal. *Behar v. Aero Med Intl.*, 185 Ga. App. 845 (1) (366 SE2d 223); accord *Robinson v. State*, 200 Ga. App. 515 (1) (408 SE2d 820). Additionally, an appellate court in determining the legal propriety of a trial court's ruling on a motion to suppress can consider all the relevant evidence of record whether found in the trial transcript and record or in the transcript of the suppression motion hearing. See *Gregg v. State*, 201 Ga. App. 238, 240 (3 b) (411 SE2d 65); *Jones v. State*, 187 Ga. App. 421, 422-423 (370 SE2d 784).

2. Appellant asserts the trial court erred in admitting the testimony of a law enforcement officer that he observed appellant driving a motor vehicle and in admitting the results of a State-administered breath test, because appellant's arrest was illegal.

A detective of the county sheriff's department received and responded to several complaints of loud noises in the vicinity of a field off a local public road. When the detective arrived in the area, he turned off his engine on the public road and heard screaming, hollering and music. The hollering sounded like people fighting and appeared to be coming from the direction of a power line easement area. Trying to locate the spot from whence the noise was emanating, the detective entered private property on a dirt road entering the easement area. Although there is a gate located on the dirt road a short distance from the public roadway, it cannot be closed. The detective drove the police vehicle along the dirt road within the power line easement and continued to turn off his engine to listen for the sounds. Thereafter, while still within the easement area, he heard the sound of an engine being "cranked-up," of wheels spinning, and the sound of a vehicle coming out of the woods towards the police car — hitting bushes and trees as it moved. The detective then observed the vehicle coming quickly out of the woods and he turned the blue light on in the police vehicle. Appellant who was driving the vehicle "pulled on into the power line and . . . stopped prior to [reaching the police] car." A passenger jumped from the front passenger seat and ran away. Appellant smelled of a strong odor of alcohol, swayed badly, and leaned against the car for support when talking. He made a voluntary, spontaneous admission that he was "too drunk to drive." Appellant

was arrested for DUI, and a subsequent Intoximeter 3000 printout showed a reading of .24. Appellant apparently was an invitee on the private property and was neither owner nor lessee thereof. The detective did not have either the owner's or lessee's permission to enter the private property when he did so.

Appellant's attorney conceded at the suppression hearing that the motion to suppress goes merely to whether the detective had a legal right to be where he was when the stop was made. The trial court held that the case at bar does not fall within those cases pertaining to "curtilage case law," and tacitly found as fact that the incident occurred in an open field. After considering the open field issue, the trial court denied the suppression motion.

County police, including the county sheriff, have general police power to investigate and make arrests (OCGA § 36-8-5; see OCGA § 15-16-10 (a) (8); § 17-4-27) as other law enforcement officials (OCGA § 17-4-20 (a)). *Hudgins v. State*, 188 Ga. App. 798, 799 (1) (374 SE2d 566) (physical precedent only). Thus, a detective employed by the county sheriff's office may make an arrest, inter alia, without a warrant if a criminal offense is committed in his presence or within his knowledge. OCGA § 17-4-20 (a).

In this instance, the detective had received complaints regarding loud noise from a certain vicinity; proceeding to that vicinity, he observed through his sense of hearing, while on a public road, screaming, hollering (which sounded like people fighting) and music. In determining whether a suspicious situation should be further investigated or an arrest based on probable cause made, an officer may rely upon information acquired through any of his senses. See *State v. Greene*, 178 Ga. App. 875 (1) (344 SE2d 771); *Martin v. United States*, 155 F2d 503 (5) (5th Cir.). And since investigation and questioning are necessary elements of crime prevention and detection, the exigencies of the situation as they reasonably appear at the time must dictate the extent of *intrusion* into any *constitutionally protected* areas. *State v. Roberson*, 165 Ga. App. 727, 729 (302 SE2d 591). Here the detective had an articulable suspicion, based on information gained through his sense of hearing while on the public road, that a disorderly disturbance and fighting was occurring in the area into which he entered; thus, he reasonably could conclude at that time that an exigent situation was at hand. Accordingly, whether the area entered in fact was constitutionally protected under the Fourth Amendment, the conduct of the detective in entering onto private land through a gate and driving thereon on a dirt road located along a power line easement to investigate the self-confirmed complaint of loud noise and the suspected fighting was a legitimate intrusion and not unreasonable conduct within the meaning of the Fourth Amendment. See also *Galloway v. State*, 178 Ga. App. 31, 34 (342 SE2d 473)

(entering property by same route as would any guest or caller held to be a valid intrusion for legitimate investigative purposes).

Additionally, in *Hester v. United States*, 265 U. S. 57, 59 (44 SC 445, 68 LE 898), the United States Supreme Court held that even if the law enforcement agents had trespassed onto privately owned land an illegal search and seizure did not occur, because the special protection accorded by the Fourth Amendment to the people in their " 'persons, houses, papers, and effects' " is not extended to the open fields. In *Reece v. State*, 152 Ga. App. 760 (264 SE2d 258), this court, citing *Hester*, concluded that evidence obtained from an aerial search of an open field owned by the brother of the defendant was not inadmissible as the product of an illegal search. In *Thompson v. State*, 154 Ga. App. 704 (1) (269 SE2d 474), citing *Hester*, we held "[a]ppellant[ ] had no Fourth Amendment protection against the seizure of contraband in the open fields of another." It has been asserted, however, that the open field doctrine in *Hester* in effect has been negated by the United States Supreme Court's subsequent holding in *Katz v. United States*, 389 U. S. 347 (88 SC 507, 19 LE2d 576). This court declined to accede to this view (see generally *Williams v. State*, 157 Ga. App. 476, 477 (277 SE2d 923); *Giddens v. State*, 156 Ga. App. 258, 259 (274 SE2d 595); *Patterson v. State*, 133 Ga. App. 742, 745 (2) (212 SE2d 858)). Moreover, in *Oliver v. United States*, 466 U. S. 170, 179 (104 SC 1735, 80 LE2d 214), the United States Supreme Court held: "In contrast, open fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or *surveillance*" (emphasis supplied), and concluded that the historical underpinnings of the open fields' doctrine demonstrates that the doctrine is consistent in respect to the concept of " 'reasonable expectations of privacy' " (id. at 180). The court also held: "It is not generally true that fences or *'No Trespassing'* signs effectively bar the public from viewing open fields in rural areas. . . . For these reasons, the asserted expectation of privacy in open fields is not an expectation that 'society recognizes as reasonable.' " (Emphasis supplied.) Id. at 179. Likewise, ineffective as a bar of the public from viewing or hearing in open fields are gates which cannot be closed and trafficable dirt roadways.

Moreover, not only was appellant in an *open field* to which, additionally, public access was readily available through a gate which could not be closed, his conduct could be readily heard and observed from within the easement area and he ultimately stopped his car within that area. A Fourth Amendment violation occurs only if a defendant manifests a subjective expectation of privacy in a class of property protected by the Amendment that society accepts as objectively reasonable; that is, "[a]n expectation of privacy does not give rise to Fourth Amendment protection . . . unless society is prepared

to accept that expectation as objectively reasonable." *California v. Greenwood*, 486 U. S. 35, 39-40 (108 SC 1625, 100 LE2d 30). Not only does an open field fall within that class of property not given Fourth Amendment protection within the meaning of *Hester*, even under the rationale of *Katz*, supra, appellant could not claim a legitimate expectation of privacy that his conduct in this open field would be free from observation from the easement area, as those persons granted the easement are likely to be found within that area; and, thus, this is not the type of expectation which the public is willing to recognize as objectively reasonable within the meaning of *Oliver v. United States* and *California v. Greenwood*, supra.

But, easement notwithstanding, "an individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers." *Oliver*, supra at 181. Questions as to whether warrantless conduct by the police is lawful under the Fourth Amendment are not strictly determined by common-law property law concepts, but are determined by whether, as here, the police action was reasonable under all the circumstances. *United States v. Johnson*, 561 F2d 832 (4) (USCA DC).

Appellant's arrest was based on probable cause that he was driving while intoxicated. The officer both heard and saw the manner in which the vehicle was operated by appellant, and visually observed appellant's conduct and appearance after he exited the vehicle in the easement area; the offense of DUI was committed in the officer's presence. We are satisfied, under the attendant circumstances, that the arrest was legal and was not tainted by the reasonable conduct of the police in entering the easement area, and that the authority relied upon by appellant in support of his claim of error is not controlling.

3. Appellant asserts his conviction for habitual violator was contrary to the law and principles of justice. He argues that he was driving only on private property; that it was the legislature's intent to remove a driver declared to be a habitual violator from the *public highways* of the state; and that the statute does not pertain to those driving only on private property.

OCGA § 40-5-58 (b) expressly prohibits a declared habitual violator from operating a motor vehicle "in this state," after receiving the requisite statutory notice. The statute "evinces a clear legislative intent to prohibit a person who has been declared a habitual violator and whose license has been revoked from operating a vehicle *anywhere* in the [s]tate," including on a private road or otherwise on private land. *Jarrard v. State*, 195 Ga. App. 704 (1) (394 SE2d 555); compare *Gaines v. State*, 260 Ga. 267 (392 SE2d 524) (defendant's conviction as a habitual violator did not deprive him of equal protection of the law notwithstanding the police officer only saw him driving on a private driveway and not on a public roadway). Thus, as appel-

lant's conviction was not contrary to law and as the evidence of record is sufficient to meet the "beyond a reasonable doubt" test of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) regarding both offenses of which appellant was convicted, his conviction as a habitual violator also was not contrary to the principles of justice as asserted by appellant.

*Judgment affirmed. Beasley and Andrews, JJ., concur.*

DECIDED JUNE 23, 1992.

*Harrison & Harrison, Stephen P. Harrison,* for appellant.
*Tommy K. Floyd, District Attorney, Charles E. Rooks, Assistant District Attorney,* for appellee.