## A94A0240. HARRISON v. THE STATE.
### (444 SE2d 354)

BEASLEY, Presiding Judge.

Harrison was charged with two counts of violation of the Georgia Controlled Substances Act by unlawful possession with intent to distribute methamphetamine and unlawful possession of diazepam. OCGA § 16-13-30 (a), (b). Pursuant to *Mims v. State,* 201 Ga. App. 277 (410 SE2d 824) (1991), she appeals the judgment of conviction and denial of her motion to suppress certain evidence.

The procedure established in *Mims* was discarded by this court in *Hooten v. State,* 212 Ga. App. 770 (442 SE2d 836) (1994). Because it was allowed in this case before *Hooten* was published and in advance of its effective date, it does not foreclose this review.

Agents of the Multi-Agency Narcotics Squad approached the house of John Franklin Bennett, a/k/a Butch, in order to conduct a search of his residence and person for drugs. This was pursuant to a waiver by him of his Fourth Amendment rights as a condition of probation. Bennett was outside and as the police approached he yelled toward an open door that "we have company." Agent Neville testified as follows:

He saw Bennett's wife Pam slam the door and run in a fast motion in the house. When he opened the door, he saw Harrison pick up a purse and go to the back of the house in a hurried fashion. She appeared very nervous. To assure the officers' security from danger,

he asked Pam to sit on the bed and place her hands in her lap. He asked Harrison, who was clutching the purse, to sit there also. Appellant was not free to leave until the premises were secured, for the officers' safety; she was not detained because she was suspected of committing any crime.

Neville took the purse from Harrison and placed it on a table as a precaution in the event it contained a weapon or knife. He then asked both women for consent to search their persons. Both Bennett and Harrison consented, emptied their pockets, and pulled out their shirts and shook them. He asked Harrison if he could search her things and pointed to a cigarette pack and the purse he had placed on the table. She consented and handed the cigarette pack to him. After he searched it, he picked up the purse, which she said was not hers. He asked Bennett if it was hers and after she replied negatively, he searched it and found drugs, drug paraphernalia, and Harrison's wallet inside. He advised Harrison she was under arrest.

Five to ten minutes later, after Bennett had been searched and the premises secured, Neville took Harrison into the rest room to talk to her in private. He informed her of her *Miranda* rights, and another investigator came to the rest room door and asked for the keys to her car, which was parked on the street in front of Bennett's house. She consented to its search, according to two officers, and told the officers that the keys were in her purse. She was asked whether there were any drugs in the car, and she said there were "two eight balls in the dash."

Six-and-one-half grams of methamphetamine powder were found inside the glove compartment. Based on this revelation, the officers asked for and obtained her consent to search her residence. Nothing was located there.

Harrison testified that the officers searched her purse and car without asking for or receiving her permission, although she acknowledged consenting to the search of her house.

The court denied the motion to suppress, finding that Harrison did consent to the search of her purse and automobile. Additionally, the court concluded that the officers had a right to search and temporarily detain anyone present in Bennett's home in order to ensure their own safety and that of others present.

Harrison contends that the order should be reversed because any consent by her to search her purse and automobile was tainted by the fact that she was illegally seized under the Fourth Amendment. Although she also invoked Art. I, Sec. I, Par. XIII of the 1983 Georgia Constitution below, she makes no argument on that basis and hence we undertake no independent review of her state constitutional rights. See *Merriman v. State*, 201 Ga. App. 817, 818 (1) (412 SE2d 598) (1991).

Her detention was lawful. To begin with a condition of probation requiring a person to submit to a warrantless search of his or her residence has been held valid. *Luke v. State*, 178 Ga. App. 614, 618 (2) (344 SE2d 452) (1986). Although lacking a warrant, the officers thus had lawful authority to enter Bennett's residence to search for drugs. Such an undertaking is fraught with danger, particularly when other people are inside. It leaves the officers vulnerable to attack. For their safety's sake in the conduct of a lawful search, they are authorized to detain occupants of the residence while the premises are being secured. Statutory law expressly allows this when there is a search warrant. OCGA § 17-5-28 (1). See also *Bonds v. State*, 188 Ga. App. 135 (372 SE2d 448) (1988). The need for detention is no less justified when the search is executed on the authority of a probation order. The ultimate standard of the Fourth Amendment is one of reasonableness. *Michigan v. Summers*, 452 U. S. 692, 699-700 (101 SC 2587, 69 LE2d 340) (1981). Harrison's brief detention while the premises were being secured comports with this standard.

In this instance, the authority to search came from her consent. The trial court found that Harrison voluntarily consented to the search. Compare *Hawkins v. State*, 165 Ga. App. 278 (300 SE2d 224) (1983); *Childers v. State*, 158 Ga. App. 613 (281 SE2d 349) (1981). We accept the trial court's decision on this question of fact and credibility at the suppression hearing since it is not clearly erroneous. *Jordan v. State*, 185 Ga. App. 670, 671 (365 SE2d 448) (1988).

*Judgment affirmed. Andrews and Johnson, JJ., concur.*

DECIDED MAY 2, 1994 —
RECONSIDERATION DENIED MAY 10, 1994.

*Summer & Summer, Daniel A. Summer*, for appellant.
*Lydia J. Sartain, District Attorney, Bernard E. Roberts III, Leonard C. Parks, Jr., Assistant District Attorneys*, for appellee.