A94A2449. CLARK v. THE STATE.
(456 SE2d 672)

BEASLEY, Chief Judge.

Dallas Clark was convicted of trafficking in cocaine. OCGA § 16-13-31 (a). He was found to be knowingly in possession of 64 times the statutory minimum of 28 grams. He appeals from the denial of his

motion to suppress evidence found in his residence and in his grocery store.

1. Clark contends the affidavit upon which the warrant to search his home was based did not establish probable cause. We consider all of the evidence of record, including that in the trial transcript. *Perry v. State,* 204 Ga. App. 643 (1) (419 SE2d 922) (1992). In addition, we must accept the trial court's findings, where there is evidence to support them. *Biffle v. State,* 214 Ga. App. 641, 642 (448 SE2d 749) (1994).

The Vidalia Police Department was engaged in an undercover drug operation and placed Ricky's Car Wash under surveillance. A confidential informant ("CI") was employed to make a drug buy at the car wash. While the officers watched, the informant got into a white car with an unknown person and left the premises. This was not part of the plan and officers did not follow the informant. The informant returned thirty minutes later and reported to police that he had been taken to Clark's home, where he remained in the car while the driver went inside and purchased over one-half ounce of cocaine. The informant told the officers that he did not enter the residence or witness the purchase. The driver, who was unknown to the police, left after depositing the informant at the car wash and was never apprehended.

Based on what had transpired and what had been related by the informant, Officer Bobby Young shortly swore out an affidavit for a search warrant, stating in relevant part: "The affiant is a police officer with the City of Vidalia and certified as such by the State of Ga. He has been employed with the City of Vidalia for the past six years. The affiant has worked drug related cases in the past as a patrolman and is now currently assigned to the criminal investigations department as a narcotics detective. The affiant has attended several specialized drug schools and seminars. He has been responsible for the arrest and convictions of numerous controlled substance offenders. He has also been responsible for the seizure of drugs, money, guns and property. The affiant begs the court for a search warrant for the address known as 629 East Grady St. Lyons Ga. The residence is under the control of Dallas Clark. The affiant had a confidential informant that made a controlled buy from this residence. CI paid $750.00 cash for (½) ounce of cocaine. This CI has proved to be very reliable in the past and used by this officer and deputies of the Toombs Co. Sheriffs Dept. The CI was searched before and after the transaction. The ½ ounce of cocaine was field tested and proved positive for cocaine. The money had the serial numbers pre-recorded. The affiant therefore has reason to believe that this residence is being concealed (sic) cocaine which is in violation of Ga. Controlled Substances Act."

The trial judge who conducted the hearing on the motion to sup-

press evidence heard the witnesses, resolved the conflicts, and concluded that there was probable cause for the magistrate to issue the search warrant. Factwise, the question is whether the evidence before the magistrate supported her finding that probable cause existed to believe the premises contained contraband.

The magistrate had previously issued a search warrant for Ricky's Car Wash based on information from the same CI. The officers had set in motion another controlled buy by the CI before they executed that warrant, and they were surveilling the car wash waiting for the transaction to transpire. The CI had been given $1,200 in $100 bills and had been searched beforehand for drugs. The buy did not occur as anticipated at the car wash; instead, a car with an unidentified driver came up, the CI got in, and it drove off. In about a half hour it returned, the CI exited and the car drove off, and the CI flicked his car lights to signal the police that the buy was complete and they should enter and execute the search warrant.

They did so and found one of the $100 bills in the car wash owner's control, the CI explaining that he had to be paid to set up the purchase elsewhere. The owner was arrested. The CI gave what tested as cocaine to the officer and explained that he had been taken to the residence whose search is now at issue; he gave $750 to the driver, who went into the residence and came out with the cocaine which the CI delivered to the officers. The CI was made to wait in the car.

The magistrate testified that the officer, who was in a hurry to get the government's money back, told her under oath the source of his information, i.e., the unnamed CI, that the CI "or someone" had just bought drugs at the location described by the CI, and that the sheriff was waiting at the house for the warrant. The officer explained to her how the need for this second search warrant stemmed from the execution of the first one she had issued. The officer did not tell her the name of the CI, but she knew that the prior information from the CI led to a successful search of the car wash.

The trial court found that the description of the buy as "controlled" was not misleading because it was "controlled" in the sense that it was pre-planned by the officers, it was accomplished with marked government money through a purchase by a CI, and the CI was searched both before and after to assure that the CI was not in possession of a drug otherwise or of the marked money. It just did not occur at the car wash, where the officers were located.

The trial court was in error about one fact; there is no evidence that the CI entered the residence sought to be searched. The affidavit does not state that the CI went into the residence, the magistrate did not testify that the officer told her the CI did so, and the officer testified that he did not tell the magistrate that the CI went into the house. He did testify that he did not explain that the CI did not go

into the house when the CI made the buy at the residence and answered "I — yes" to the question: "Did you make her believe that your informant is the one that made the hand to hand purchase in Lyons?"

The trial court found that the information from the CI was corroborated by the CI's production of cocaine after the half-hour trip, the absence of the $750, and the before-and-after search. It was also corroborated by the successful search of Ricky's and his arrest a short time before, based on information from the same CI. The officers knew that the location described by the CI was that of defendant; the sheriff knew defendant, and he was named in the search warrant as the person in control of the residence. The CI would know that his own interests would be in great jeopardy if he identified the wrong location as the place from which the one-half ounce of cocaine had come and at which, consequently, the marked bills could be found.

Had the officer made clear to the magistrate that the CI did not go in the residence and buy the cocaine directly from the person in control of the residence, there would still be present probable cause to believe that the cocaine came from that house and the pre-recorded funds and/or more cocaine would be there to evidence it as the source of the controlled substance. See *Williams v. State*, 232 Ga. 213, 214 (1) (205 SE2d 859) (1974).

The reliability of the car's driver is immaterial, and there is no evidence of anything that person said which was relied on in issuing the warrant. It is reasonable to infer that the driver did in fact obtain the cocaine from the residence to which he drove with the buyer/CI and in which he went with the purchase money and from which he came with the cocaine delivered to the buyer/CI who was waiting in the car. Although it is possible that he went to the residence as a decoy and had the cocaine in his possession all along, it is not likely; no reason appears for such a scenario. In any event, the driver was not the purchaser but merely the go-between; he obtained funds for the transaction from the CI and delivered the purchased item to the CI.

The affidavit itself should have reflected more of what was related to the magistrate so that there was a clear record instead of recalled and incomplete memory; or it should have been tape-recorded or memorialized in some other manner. The Supreme Court of Georgia has made this plain, stating at least twice that the attesting officers and magistrates should "make every effort to see that supporting affidavits reflect the maximum indication of reliability. . . ." *State v. Stephens*, 252 Ga. 181, 184 (311 SE2d 823) (1984); *Gary v. State*, 262 Ga. 573, 577 (422 SE2d 426) (1992). Valid searches should not be set at risk because of the lack of a record. Those who are trained to seek warrants as part of their professional duties, and those

who are authorized by law to issue or deny them, are responsible for making a record which will prove the legal validity of their actions with accuracy and completeness.

Nevertheless, considering all of the circumstances known to the magistrate, as well as the fact that the CI did not go into the residence to witness the exchange of the money he provided for the drugs obtained, there was probable cause to believe that evidence of the sale (the money) if not both the money and additional drugs, would be found in the premises. *Stephens*, supra.

We cannot conclude that the trial judge erred as a matter of law in concluding that the affidavit and additional information, supplied to the magistrate or known to her by way of the prior warrant, passed federal constitutional muster. There was at least a "fair probability" that the items and persons being sought would be found there. Id. at 182.

2. Clark also challenges the search warrant on the ground that the issuing magistrate was not neutral because her son was a Vidalia police officer. The affiant was a narcotics detective with the same police department and had been such for about seven months at the time the warrant was issued. Defendant did not contest the State attorney's statement that the magistrate's son "was not involved in this particular case in any way whatsoever."

It is fundamental that the adjudicator who determines whether probable cause exists to issue a search warrant must be " 'neutral and detached.' " *Vaughn v. State*, 160 Ga. App. 283 (287 SE2d 277) (1981), and cases cited therein. The fact presented by defendant does not, standing alone as it does, disqualify the magistrate either because of the family relationship or because of her consequent connection with the executive department of government. There is not shown a per se disqualification based on lack of disinterestedness or on violation of the separation of powers. Compare *Vaughn v. State*, supra.

3. The final challenge to the warrant is that it was insufficient because it failed to state with specificity the address of the premises to be searched. The State concedes that the address, "629 East Grady St. Lyons, Ga. and to include the curtilage," was incorrect. The magistrate testified that although the address was not on the warrant at the time the officer presented it to her, "he told [her] where the house was located, . . . how to get to the house, . . . who was standing by at the house for the warrant to get there . . . where he received the information for this search. . . . He knew where the house was located, but the person [who] had given him the information could not tell him the address of the house." She understood that the location was obtained from the CI who had just purchased cocaine at the premises, that the sheriff had gone to the residence described by the CI and was waiting there, and that it was the residence of Dallas Clark.

The place authorized to be searched was sufficiently described.

4. Lastly, Clark contends that the court should have suppressed the items from his place of business because any consent to search the business was rendered involuntary by the fact that it was the result of an illegal arrest. He maintains that the sheriff's detaining of him at his residence to await the search warrant constituted an arrest and was illegal because it lacked probable cause.

The trial court found that the sheriff's detention of the residents of the premises until the search warrant was issued was but a "brief seizure" as defined in *Mixon v. State*, 184 Ga. App. 623 (362 SE2d 111) (1987). However, even if the detention was found to constitute an arrest, it was not without probable cause. "The basis for issuance of a warrant by a magistrate is almost identical to the basis for a warrantless arrest, i.e., 'facts sufficient to show probable cause that a crime is being committed or has been committed. . . .' OCGA § 17-5-21 (a). The U. S. Supreme Court [cit.] and this court [cit.] have held that they are the same." *State v. Banks*, 185 Ga. App. 760, 762 (365 SE2d 855) (1988).

The probable cause that supported issuance of the search warrant for Clark's home would likewise have supported his warrantless arrest. See Division 1, supra.

*Judgment affirmed. McMurray, P. J., Birdsong, P. J., Pope, P. J., and Andrews, J., concur. Johnson, Blackburn, Smith and Ruffin, JJ., dissent.*

JOHNSON, Judge, dissenting.

I do not agree that the affidavit upon which the warrant to search Clark's home was based established probable cause. Officer Young's affidavit omitted critical information and contained false statements. Young admitted on cross-examination that in obtaining the warrant he led the magistrate to believe that the informant made the "hand to hand" purchase at Clark's residence when in reality the informant never went inside. Young gave no indication in the affidavit that only the unknown driver entered Clark's home. Young also admitted at the suppression hearing that because officers did not continue their surveillance of the informant once he left the car wash, the buy in this case was not, contrary to his assertion in the affidavit, a controlled one. See, e.g., *Sullivan v. State*, 178 Ga. App. 769, 770 (344 SE2d 737) (1986). Under the authority of *Franks v. Delaware*, 438 U. S. 154 (98 SC 2674, 57 LE2d 667) (1978), the false testimony cannot be used to establish probable cause. *Peters v. State*, 213 Ga. App. 488, 489 (445 SE2d 290) (1994); see *Daniels v. State*, 183 Ga. App. 651, 652 (359 SE2d 735) (1987). Once a court determines an affidavit contains false statements or omissions as set out in *Franks*, the false statements must be deleted, the omitted truthful material included, and the affi-

davit reexamined to determine whether probable cause exists to issue a warrant. *Peters*, supra at 489-490. In determining whether an affidavit sufficiently establishes the probable cause necessary for issuance of a warrant, all of the circumstances set forth in the reformed affidavit must be considered, including the veracity and basis of knowledge of persons supplying hearsay information. See *Gary v. State*, 262 Ga. 573, 577 (422 SE2d 426) (1992); *Wood v. State*, 214 Ga. App. 848 (449 SE2d 308) (1994). "The 'totality of the circumstances' analysis applies also in situations in which there are two informers." *Munson v. State*, 211 Ga. App. 80, 81 (438 SE2d 123) (1993). In this case, the information that there was cocaine inside Clark's residence could only have been provided by the unidentified driver. It is undisputed that his reliability is unknown. A deficiency created by the fact that the reliability of either source has not been established can be corrected by the corroboration of the information, thereby providing a substantial basis for finding probable cause. Id. at 82. Here, there was no corroboration of the claim that cocaine was being sold from Clark's residence. "No matter how truthful or sincere the information from the reliable source, the crucial question is the unidentified third-party's reliability, and that is simply not established in the affidavit." *Wood*, supra at 849. In my opinion, with the affidavit's false material set to one side and previously omitted material included, the affidavit's remaining content is insufficient to establish probable cause. See *Daniels*, supra. Compare *State v. Thomas*, 203 Ga. App. 623, 624 (417 SE2d 328) (1992). Therefore, I believe the trial court erred in denying Clark's motion to suppress evidence found in his residence. See *Talley v. State*, 200 Ga. App. 442, 445 (3) (d) (408 SE2d 463) (1991).

Similarly, I must dissent from the holding in Division 4. I believe the trial court erred in denying Clark's motion to suppress evidence found at his place of business because his consent stemmed from an illegal arrest and unauthorized search of his residence. Sheriff Charles Durst detained Clark in his residence for one-and-one-half hours while waiting for Officer Young to obtain the search warrant. Durst testified that Clark was not free to leave and would have been arrested had he attempted to do so. When Young did arrive with the warrant, Clark was asked if he would consent to a search of his place of business, which he did. However, consent is not valid if it is the product of an illegal detention. See generally *VonLinsowe v. State*, 213 Ga. App. 619, 622 (2) (445 SE2d 371) (1994). I realize that officers may detain occupants of a residence while the premises are being secured pursuant to a search warrant. *Harrison v. State*, 213 Ga. App. 174, 176 (444 SE2d 354) (1994). Here, however, I do not believe there was a valid search warrant. Moreover, the prolonged detention in this case amounted to an arrest and, to be lawful, must have been supported by probable cause. See *State v. Corbett*, 205 Ga. App. 554, 556

(423 SE2d 38) (1992). Probable cause to arrest Clark did not exist prior to the search. Because the officers had no valid warrant authorizing a search of Clark's home and no probable cause to arrest him, his detention was illegal and his consent to search the store tainted. In my opinion, the trial court erred in denying Clark's motion to suppress evidence obtained in the search of his business.

I am authorized to state that Judge Blackburn, Judge Smith, and Judge Ruffin join in this dissent.

DECIDED MARCH 17, 1995 —
RECONSIDERATION DENIED MARCH 30, 1995 —

*Solomon & Edgar, M. Theodore Solomon II, Alan P. Layne,* for appellant.

*Richard A. Malone, District Attorney, S. Hayward Altman, Assistant District Attorney,* for appellee.