A97A0847. McDANIEL v. THE STATE.
(489 SE2d 112)

McMURRAY, Presiding Judge.

During an investigative traffic stop, defendant Christopher McDaniel consented to a search of his vehicle and person, where the police officer found marijuana, cocaine, and stolen goods. Defendant's combined motion to suppress/motion in limine was denied. After a bench trial, defendant was found guilty of two counts of violating the Georgia Controlled Substances Act for possession of cocaine and possession of less than one ounce of marijuana, and further found guilty of entering an automobile with the intent to commit a theft. The question on appeal is whether the officer, who had observed no suspicious conduct, could properly stop the vehicle based on a "be on the lookout" dispatch which, unbeknownst to the officer, had been revoked. We hold the stop was authorized under the circumstances of this case and affirm the convictions.

Only Officer Monteau and Officer Hudson testified at defendant's suppression hearing. Their evidence would authorize the following findings of fact: Just before midnight on April 16, 1996, Officer Monteau of the Clayton County Police Department was dispatched to the Brookstone Ridge Apartments, where a tenant reported that he had twice seen the occupants of a white Isuzu Rodeo suspiciously looking into the tenant's parked Jeep Cherokee. The first time, "he saw a white Isuzu Rodeo and a silver Isuzu Rodeo driving through his apartment complex, and both vehicles had stopped by his [the tenant's] Jeep Cherokee and the occupants had took a look at it. . . ." At 2:34 a.m., Officer Monteau witnessed two such vehicles leaving the adjoining Garden Walk Apartments. The white Isuzu Rodeo had a "Bob Davis drive out tag. . . ." The silver Rodeo's driver slammed on his brakes, turned his lights off, and put the vehicle in reverse while the white Rodeo sped off in another direction. Suddenly the silver Rodeo sped out of the apartment complex at a high rate of speed, and Officer Monteau followed. The silver Rodeo then turned

into the next apartment complex, but because of a security gate, returned immediately to the highway. Based on this suspicious conduct, Officer Monteau radioed his dispatcher to contact the neighboring Riverdale Police Department to be on the lookout for a possible stolen silver Rodeo with a certain tag number. Officer Monteau turned on his blue flashing lights and stopped the silver Rodeo. Joined by another officer from his police force, Officer Monteau questioned and frisked the driver, defendant McDaniel, and the other occupants. Defendant would not consent to a vehicle search. Determining that the Rodeo was not stolen and finding nothing amiss, Officer Monteau allowed them to leave and informed his dispatcher of the results of the stop. The dispatcher's duty was to pass this information on to the Riverdale police.

Officer Lee Hudson of the Riverdale Police Department "receive[d] a lookout over [his] radio[, for two] Isuzu Troopers or Rodeo type vehicles, one silver and one white, . . . believed . . . to be stolen vehicles or one of them to be stolen." Acting on the original lookout and unaware of the previous traffic stop by Officer Monteau, Officer Hudson pulled the same Rodeo over, roughly an hour after Officer Monteau had released it. Upon speaking with defendant, Officer Hudson "could smell heavy marijuana smoke inside the vehicle." Officer Hudson asked for defendant's consent to search the vehicle. Defendant "said yes, and stepped out of the car. As he stepped out of the car, [Officer Hudson saw] on the floorboard . . . a partial marijuana cigarette and one in the ashtray." Officer Hudson obtained a "separate consent to search [defendant's] body," at which time Officer Hudson found three bags of suspected cocaine in defendant's left front pocket. Officer Hudson "noticed several pieces of shattered glass from a vehicle window in the floorboard carpet. A further search found several Freaknik type tee-shirts. [Officer Hudson] then radioed to Clayton County Unit 324[, i.e., Officer Monteau,]" to "check the Garden Walk Boulevard area where he saw the vehicles to see if there had been any vehicles entered in that area." Officer Monteau did not inform Officer Hudson of the results of his previous stop of defendant's vehicle. *Held*:

1. In his first enumeration of error, defendant claims that Officer Monteau lacked an articulable suspicion to make the initial stop. We disagree.

When defendant first saw Officer Monteau, he slammed on his brakes, turned off his headlights, and immediately put his vehicle in reverse. Defendant raced away, unsuccessfully trying to enter a secure complex before abruptly speeding off again. These odd and evasive circumstances created a reasonable suspicion of criminal activity to permit a limited investigative stop of the vehicle. *Stanley v. State*, 191 Ga. App. 603, 604 (2) (382 SE2d 686). " [D]eliberately

furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea*.' [Cit.]" *State v. Webb*, 193 Ga. App. 2, 4 (1) (386 SE2d 891). See also *Burgeson v. State*, 267 Ga. 102, 105 (3) (a) (475 SE2d 580) ("Flight can be a significant factor in determining probable cause.").

2. In his second and third enumerations, defendant contends Officer Hudson lacked any reasonable, articulable suspicion to stop his vehicle after he had been released by Officer Monteau.

In the case sub judice, defendant consented to the search of his vehicle and person, yielding the tangible items (marijuana cigarettes, cocaine, and stolen tee shirts) sought to be suppressed. " 'Once a voluntary consent is legally obtained, it continues until it either is revoked or withdrawn. (Cits.)' *Mallarino v. State*, 190 Ga. App. 398, 403 (2) (379 SE2d 210) (1989). ' "A valid consent eliminates the need for either probable cause or a search warrant. (Cit.)" ' *Wright v. State*, 189 Ga. App. 441, 444 (1) (375 SE2d 895) (1988)." *Boggs v. State*, 194 Ga. App. 264 (390 SE2d 423). If Officer Hudson was authorized to stop defendant's vehicle and approach, the consent to search is not invalid.

When the police received a call to be on the lookout for a possibly stolen car, and defendant's car "roughly fit the description given for the lookout, this provided the basis for an articulable suspicion justifying the stop. Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968); *Brisbane v. State*, 233 Ga. 339 (211 SE2d 294) (1974)." *McGhee v. State*, 253 Ga. 278, 279 (1) (319 SE2d 836). We conclude the stop of defendant's vehicle was lawful, even though based on a revoked "be-on-the-lookout" dispatch, where that revocation preceded the stop by but one hour and such revocation had not yet been communicated to the arresting officer. Specifically, the Riverdale officer's momentary detention of defendant's vehicle was reasonable despite being based on another jurisdiction's (Clayton County's) recalled dispatch, where the recall of that dispatch one hour earlier was not seasonably communicated.

The existence of a reasonable suspicion to stop a moving vehicle, like " '[t]he existence of probable cause [to arrest] must be "measured by current knowledge, i.e., at the moment the [stop or] arrest is made and not hindsight. (Cit.)" (Cit.)' *Jackson v. State*, 191 Ga. App. 439, 441 (2) (382 SE2d 177) (1989)." *Harvey v. State*, 266 Ga. 671, 673 (469 SE2d 176). "Although in [stopping defendant's silver Rodeo with the specified tag number in the case sub judice], the [Riverdale] officer relied upon the [initial report of the Clayton County officer], he [Riverdale officer] neither knew, nor could be reasonably expected to have known, that the information [of a possible stolen vehicle] was incorrect when he made the arrest. The [articulated suspicion], which [had just been recently] proven wrong, was stale by [less than

an hour]. This Court, in hindsight, [ought] not declare [an otherwise reasonable traffic stop] to be invalid when the [detaining] officer reasonably relied upon [an articulated ground] which he had no reason to [suspect] was incorrect. [Cits.]" *Harvey v. State*, 266 Ga. supra at 673. It follows that the Riverdale officer was justified in approaching defendant's car, where he detected the distinctive aroma of marijuana. See, e.g., *Galbreath v. State*, 213 Ga. App. 80, 82 (2) (443 SE2d 664). The trial court correctly denied defendant's motion to suppress and that ruling is affirmed.

The dissent's reliance on *State v. Stringer*, 258 Ga. 605 (372 SE2d 426), is misplaced. In *Stringer*, that defendant was arrested on a 21-month-old bench warrant for two misdemeanor charges, even though that bench warrant had been recalled. The trial court's suppression of Stringer's custodial statement was affirmed by the Supreme Court of Georgia, which reasoned that the "documented collective knowledge and negligence of the law-enforcement department must be imputed to the officer executing the [recalled] bench warrant. [Cits.]" 258 Ga. supra at 607. Like the Supreme Court in *Harvey*, we conclude that "*State v. Stringer*, supra, is not authority for a contrary holding." 266 Ga. supra at 673. "Probable cause for an arrest[, like reasonable suspicion to detain,] does not depend on, and is an entirely separate question from, the existence of a valid bench warrant and its reasonable execution. [Cit.]" *Harvey v. State*, 266 Ga. supra at 673.

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., and Eldridge, J., concur. Beasley, Smith and Ruffin, JJ., dissent.*

BEASLEY, Judge, dissenting.

I concur in Division 1 but dissent with respect to Division 2. In it we focus on McDaniel's motions to suppress the evidence found by Officer Hudson and to exclude Hudson's testimony, which motions the trial court denied after an evidentiary hearing. As grounds, McDaniel invoked the Fourth Amendment.[1]

Evidence obtained in violation of the federal constitution, as well as evidence obtained in violation of state law, is inadmissible at trial as a matter of state statute. OCGA § 17-5-30. Although the United States Supreme Court has acknowledged a good faith exception to the federal rule of inadmissibility, the Supreme Court of Georgia has rejected the same, jurisprudentially, with respect to the Georgia statute. *Gary v. State*, 262 Ga. 573 (422 SE2d 426) (1992). Thus evidence obtained in violation of a defendant's Fourth Amendment constitu-

---

[1] Near the end of his appellate brief, McDaniel makes a vague reference to the "++ Amendment to the Georgia Constitution." Raised for the first time on appeal and unsupported by any argument, this incomplete and vague reference cannot be considered.

tional rights will be suppressed in Georgia regardless of the innocent intentions of the police officer.

The sole basis for Officer Hudson's stop was the original radio dispatch to be on the lookout for the silver Rodeo with a specific tag number as a possible stolen vehicle. An officer may indeed act on a radio-dispatched lookout as reasonable grounds to stop a vehicle. "The investigating deputy [is] authorized to rely upon the determination by . . . a fellow law enforcement officer that circumstances required that an investigative stop be made of the" vehicle. (Citations and punctuation omitted.) *Griggs v. State*, 167 Ga. App. 581, 582 (1) (307 SE2d 75) (1983). See *Whiteley v. Warden*, 401 U. S. 560 (91 SC 1031, 28 LE2d 306) (1971); *State v. Wright*, 221 Ga. App. 202, 205 (3) (470 SE2d 916) (1996) ("the apprehending officer[ ] 'was entitled to rely on the information given him by a fellow officer' in the formation of an articulable suspicion"). See also *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990) ("police officers are authorized to use information received by radio as part of their basis for establishing probable cause"). A determination of reasonable suspicion or probable cause "can rest upon the collective knowledge of the police when there is some degree of communication between them, instead of the knowledge of the arresting [or investigating] officer alone." *Burgeson v. State*, 267 Ga. 102, 105 (3) (a) (475 SE2d 580) (1996). See *Tarwid v. State*, 184 Ga. App. 853, 855 (1) (363 SE2d 63) (1987) ("reasonable suspicion may exist based on the collective knowledge of law enforcement officials," citing *United States v. Allison*, 616 F2d 779 (5th Cir. 1980)).

"There is no requirement that the officer making the stop have all the information the original officer had about a suspect and the informant. In other words, 'the searching officer need not personally be aware of all the facts which would support a [reasonable suspicion] determination so long as it can be established by evidence that the searching officer's actions were the end result of a chain of information-sharing, one link of which is an officer in possession of the 'information requisite to support an independent judicial assessment of [reasonable suspicion].' " (Citations and punctuation omitted.) *Beck v. State*, 216 Ga. App. 532, 534-535 (1) (455 SE2d 110) (1995). See *State v. Fowler*, 215 Ga. App. 524 (451 SE2d 124) (1994) (to determine validity of stop based on radio report, court should test facts known to reporting officer).

Here the question is whether this key link disintegrated when Officer Monteau stopped McDaniel and determined that the vehicle was not stolen and that nothing else was amiss. If this key link is found defective at that point, the chain was broken and could no longer serve as a basis for the reasonable suspicion needed for Officer Hudson's later stop. The question is whether, if the first officer put-

ting out the lookout obtains knowledge eviscerating the grounds for reasonable suspicion and revokes the lookout, that new knowledge essentially is imputed to the second officer who later stops the suspect, even if for some reason the second officer was not notified of the revocation of the lookout. The answer is yes.

Although *State v. Henderson*, 215 Ga. App. 215, 216 (450 SE2d 288) (1994), is physical precedent only, its ultimate ruling is valid and persuasive in this analogous case. In *Henderson*, the investigating officer heard a radio broadcast to be on the lookout for a 1981 burgundy Buick, no tag available, occupied by several black males suspected of stealing the car and killing its owner. An updated lookout was broadcast two minutes later, stating the stolen car was a 1981 Buick LeSabre, any color from maroon to pink, with a broken taillight and occupied by six heavily armed black males. The investigating officer "did not remember if he heard" the updated message. Seeing two black males in a burgundy 1981 Buick Electra with no broken taillight (a description that matched the first broadcast), the investigating officer ran a computer check on the license plate, which showed it was not stolen. The officer nevertheless conducted a *Terry* stop and discovered evidence of another crime.

Imputing the knowledge of the updated broadcast to the investigating officer, we held that in addition to knowing through the computer check that the car was not stolen the officer "knew the make was different, the taillight was not broken and the number of occupants varied from the description given in the" updated broadcast. Id. at 218. The evidence was suppressed.

The Supreme Court of Georgia has employed a similar analysis in cases where the bench warrant on which an officer acted in arresting and searching the defendant had, unbeknownst to the arresting officer, actually been revoked. In *State v. Stringer*, 258 Ga. 605 (372 SE2d 426) (1988), the original bench warrant was recalled when the defendant appeared before the court. An officer unaware of the recall used that warrant to arrest the defendant, who then confessed to murder and armed robbery while in custody.

The Supreme Court reasoned: "The proper focus of inquiry in this case is whether the [police department] knew or should have known that their information about the bench warrant was incorrect. If the information was incorrect or incomplete and they are at fault, they should not be permitted to rely upon it and justify an arrest based upon it. The primary reason for the exclusionary rule is to deter police misconduct, whether it be negligent or intentional. . . . '(A) contrary holding — which would sanction evidence seized through the arrest of any citizen merely because he has once been legally subject to apprehension — would affirmatively encourage the careless, perhaps deliberately neglectful, failure to delete names

from that proscribed list on what would then be the correct theory that the longer the list, the more persons subject to search and the consequent seizure of admissible evidence. Affirmance would therefore actually advance just that impermissible, indeed unconstitutional, conduct the exclusionary rule was expressly adopted to prevent.'" *Stringer*, 258 Ga. at 606-607.

In a subsequent split decision (4-3), the Supreme Court of Georgia held valid an arrest based on a revoked bench warrant where the officer immediately prior to the arrest called the Georgia and National Crime Information Centers to confirm the validity of the warrant. *Harvey v. State*, 266 Ga. 671 (469 SE2d 176) (1996). Officer Hudson engaged in no such confirmation here.

In *Boatright v. State*, 225 Ga. App. 181, 184 (483 SE2d 659) (1997), we held as inadmissible the evidence obtained through an arrest where the officer relied in good faith on an invalid probation arrest warrant. We distinguished *Harvey* on the ground that "it was the *affirmative acts* of the police themselves which invalidated the warrants in [Boatright], not an administrative computer glitch" as in *Harvey*. (Emphasis in original.) Similarly, it was the *affirmative acts* of Officer Monteau in stopping and clearing McDaniel the first time which invalidated the reasonable suspicion upon which Officer Hudson was in good faith relying, not an administrative computer failure.

Allowing evidence obtained by a second officer stopping a vehicle after the vehicle has already been stopped and cleared would encourage police to not communicate or at least to delay in communicating the results of the first stop in the hope of obtaining admissible evidence. But the State cannot escape the effect of a crumbled foundation. Furthermore, a citizen who has been stopped and cleared should reasonably expect such information to be passed on and should not be subject to multiple *Terry* stops to investigate the same "suspicious" conduct. Accord *United States v. Shareef*, 100 F3d 1491, 1503 (10th Cir. 1996) ("exclusionary rule applies when an error by a dispatcher or an officer leads to a Fourth Amendment violation"); *People v. Ramirez*, 668 P2d 761, 764 (Cal. 1983) ("if we impute to the arresting officer the collective knowledge of law enforcement agencies for the purpose of establishing probable cause, we must also charge him with knowledge of information exonerating a suspect formerly wanted in connection with a crime"); *State v. Mance*, 918 P2d 527 (Wash. App. 1996); *People v. Mitchell*, 678 P2d 990, 995 (Colo. 1984); *Carter v. State*, 305 A2d 856, 860 (Md. App. 1973). Compare *United States v. Zurosky*, 614 F2d 779, 786 (1st Cir. 1979) (exculpatory evidence learned by one officer not imputed to fellow officer but exculpatory evidence did not extinguish probable cause to search even if imputed).

The first investigative stop eliminated the basis for the original

lookout and caused the necessary link referenced in *Beck v. State*, supra, to evaporate. Based on the "collective knowledge" concept employed in *Tarwid v. State,* supra, and its progeny, at that point no officer could any longer rely on the radioed lookout as a basis for a *Terry* stop, regardless of whether the second officer actually learned of the results of the first *Terry* stop.[2]

Because the stop by Officer Hudson lacked reasonable suspicion, the consent obtained during that stop to search the vehicle and person of McDaniel is tainted and thus invalid. *Bowers v. State*, 221 Ga. App. 886, 888 (473 SE2d 201) (1996); *Tarwid v. State*, supra, 184 Ga. App. at 856. McDaniel's conviction based on this evidence cannot stand.

I am authorized to state that Judge Smith and Judge Ruffin join in this dissent.

DECIDED JULY 15, 1997.

*Emmett J. Arnold IV*, for appellant.
*Robert E. Keller, District Attorney, Lisa S. Estes, Assistant District Attorney*, for appellee.

---

[2] On the other hand, if an officer who posts a lookout that a defendant should be arrested lacks probable cause but later obtains evidence meeting the probable cause standard before the arrest by another officer is made, "his subsequently obtained knowledge cannot be imputed to the arresting officer." *Hunt v. State*, 212 Ga. App. 217, 218 (441 SE2d 514) (1994). Because at the time the lookout was posted the lookout was invalid, the chain of information-sharing was never properly forged and can therefore not support an arrest. Id. See also *United States v. Edwards*, 885 F2d 377, 382 (7th Cir. 1989); *People v. Ford*, 198 Cal. Rptr. 80 (Cal. App. 5th Dist. 1984); *State v. Mickelson*, 526 P2d 583 (Or. App. 1974). Contra, *Johnson v. State*, 660 S2d 648 (Fla. 1995). To protect constitutional rights, warrantless searches must be considered carefully so as to avoid encouraging police misconduct. See *State v. Stringer*, 258 Ga. at 607.