A97A2092. CUNNINGHAM v. THE STATE.
(498 SE2d 590)

BEASLEY, Judge.

Cunningham appeals his conviction of driving under the influence. OCGA § 40-6-391 (a) (1).

1. He enumerates as error the denial of his motion to suppress all evidence and statements seized as a result of an allegedly illegal stop of his vehicle. The trial court did not err as a matter of law in denying the motion, which was based on the asserted absence of a valid articulable suspicion for the officer to stop Cunningham's car.

At the motion hearing, which bridged two days, the arresting officer testified that he was patrolling in a known high drug area about 5:15 a.m., a Sunday morning, when he noticed a vehicle unfamiliar to him being driven slowly by Cunningham, whom he did not know. These circumstances caused him concern, so he "ran the tag" by asking the dispatcher to check on it by number. He actually gave the number of GTL 689 to her twice, i.e., in two different ways. The dispatcher checked and related to the officer, without repeating the number, that the tag belonged on another vehicle. That being a violation of law, OCGA § 40-2-6, the officer conducted a traffic stop. The officer's belief in the license plate number discrepancy was the sole reason for the stop.

According to the officer, the dispatcher checked on the wrong number and thus gave the officer erroneous information. After the officer arrested Cunningham for driving while intoxicated and took Cunningham to the police station, the officer discovered the error when checking "the paperwork on the tag."

That is all the evidence on the point. Cunningham argued to the trial court that the stop was constitutionally infirm "because of the miscommunication or error."

When the hearing reconvened, the trial court found as fact that the stop was not pretextual but was based on an error of fact, made either by the officer when he called the number in or by the dispatcher when she heard the number. The court further found that it was an "honest human mistake . . . [not] a contrived error" and not "done in bad faith." The court reiterated: "I think it was just a good faith human error in listening to the numbers wrong or calling the numbers out wrong. You know, when you give numbers, sometimes — in fact, I find myself doing that sometimes, quite frankly. I will look at a phone number, for example, and call the number out wrong

when I am just looking right at a phone number, you know. . . . Sometimes your brain is not connected to your mouth." The court specifically made a point of rejecting any nefarious underhandedness, stating: "I don't find that there has been any evidence presented that would make me believe that what occurred here was anything more than [human error]."

The court further found that "when the officer made the stop, he was making it in good faith, believing that he was stopping the defendant for having the wrong tag on the vehicle, and that that was a justifiable reason for making the traffic stop." The court actually applied the higher probable cause standard, even though it recognized that validity depended only on an articulable suspicion.

The denial of the motion was based on those findings.

Although Cunningham pays lip service to the state constitution by referring to it in general in his enumeration, he does not present this as a separate and independent basis for his contention of illegality. Thus there is no need to address such a ground. *Harrison v. State*, 213 Ga. App. 174, 175 (444 SE2d 354) (1994).

On motions to suppress evidence, the trial court is the finder of fact, and we must abide by its findings if supported by any evidence. *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990). "This court is limited to resolving questions of law rather than fact. [Cits.]" *Fine & Block v. Evans*, 201 Ga. App. 294, 295 (1) (411 SE2d 73) (1991). "When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. [Cit.]" *Morgan*, supra, 195 Ga. App. at 735.

We do not fault the State for not proving that the radio equipment used by the officer in the communications was in good working order and for not proving that there was an adequate protocol established and followed with respect to assuring accuracy of information conveyed. This would introduce, without authority or rationale, a new burden into the determination of whether a *Terry* stop is based on articulable suspicion. To the contrary, *McDaniel v. State*, 227 Ga. App. 364, 366 (2) (489 SE2d 112) (1997), found reasonable a *Terry* stop based on a revoked "be-on-the-lookout" dispatch even though the police officer who stopped the vehicle did not verify the dispatch or assure its accuracy and thus did not find out that it had been withdrawn.

Nor can we substitute as an appellate finding of fact that the officer was not shown to be justified in relying on the dispatcher's response gleaned from checking official records in forming a reasonable, articulable suspicion. That is beyond our competency. In forming an articulable suspicion, an officer is "entitled to rely on the information given him by a fellow officer." *Chumbley v. State*, 180 Ga. App.

603, 604 (349 SE2d 823) (1986); see *State v. Wright*, 221 Ga. App. 202, 205 (3) (470 SE2d 916) (1996) (same); see generally *United States v. Hensley*, 469 U. S. 221, 230-231 (105 SC 675, 83 LE2d 604) (1985) (may rely on fellow officers for articulable suspicion); *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U. S. 560, 568 (91 SC 1031, 28 LE2d 306) (1971) (may rely on fellow officers for probable cause).

The stop here is analogous to the arrest in *Harvey v. State*, 266 Ga. 671, 673 (469 SE2d 176) (1996), in that both were based on misinformation which the officer "neither knew, nor could be reasonably expected to have known, . . . was incorrect when he made" the arrest of Harvey and the stop of Cunningham. This Court, proceeding similarly to the Supreme Court in *Harvey*, should not "in hindsight . . . declare a [stop] to be invalid when the arresting officer reasonably relied upon information which he had no reason to think was incorrect. [Cits.]" Id. "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. . . ." *Hill v. California*, 401 U. S. 797, 804 (II) (91 SC 1106, 28 LE2d 484) (1971). As in *Hill*, another case which like *Harvey* involved an arrest based in part on erroneous information, "on the record before us the officer['s] mistake was understandable and the [stop] a reasonable response to the situation facing [him] at the time." *Hill*, supra.

This Court has previously recognized that "police officers are authorized to use information received by radio as part of their basis for establishing probable cause. [Cit.]" *Morgan*, supra, 195 Ga. App. at 735 (3). Surely the same applies to the establishment of an articulable suspicion to conduct a less intrusive *Terry* stop, which does not constitute an arrest requiring probable cause. See *McDaniel*, supra; *Chumbley*, supra; *Wright*, supra. Compare *State v. Henderson*, 215 Ga. App. 215, 218 (450 SE2d 288) (1994) (the detention constituted an arrest, not a mere *Terry* stop, the latter of which is justified "by specific and articulable facts which reasonably warrant that [limited] intrusion").

There is no suggestion by Cunningham, much less a shred of evidence including all reasonable inferences, that the error was attributable to any cause but the one found by the trial court.

The burden is on the State in opposing a motion to suppress evidence on the grounds of an illegal stop. OCGA § 17-5-30 (b); *Davis v. State*, 266 Ga. 212 (465 SE2d 438) (1996). The court had evidence to rule in favor of the State, and consequently the trial court's ruling did not give rise to a reversible conviction.

2. Cunningham's challenge to the sufficiency of the evidence is met with our conclusion that evidence at trial authorized a rational trier of fact to find him guilty of driving "[u]nder the influence of alcohol to the extent that it [was] less safe for [him] to drive." OCGA § 40-

6-391 (a) (1); see *Martin v. State*, 216 Ga. App. 25 (453 SE2d 498) (1995); *Lewis v. State*, 214 Ga. App. 830, 831 (1), 832 (449 SE2d 535) (1994); *McFarland v. State*, 210 Ga. App. 426 (2), 427 (436 SE2d 541) (1993). The sufficiency test is set out in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The officer conducted the alco-sensor field sobriety test, which gave a positive result for alcohol. Cunningham refused to take a designated breath test. The officer testified that in his opinion Cunningham was a less safe driver, based on the officer's observation of the state of intoxication, including that defendant was unsteady on his feet, had bloodshot eyes, slurred speech, and an odor of alcohol about his person.

The State was not required to produce any evidence that Cunningham had actually committed an unsafe act. *Moss v. State*, 194 Ga. App. 181, 182 (390 SE2d 268) (1990). We decline defendant's invitation to reconsider the holding in *Moss* and to place such a burden on the State.

3. An examination of Cunningham's other enumerations of error does not lead to a new trial either. The conviction is affirmed.

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., Smith and Eldridge, JJ., concur. McMurray, P. J., and Ruffin, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

As I am unable to concur with the reasoning stated in Division 1 of the majority opinion, I respectfully dissent. In my view, the majority fails to recognize the significance of the factual distinctions between the present case and the authority cited in its opinion.

The cases cited by the majority involve peace officers who have acted in reliance on stale or incorrect information which has been accurately communicated to them. In contrast, the police records in the present case contained correct information which was not accurately conveyed to Officer Banks. The fact of the corruption of the information being shared does not alone remove the present case from the case law followed by the majority. The important distinction lies in the fact that Officer Banks was a party to the miscommunication which corrupted the license plate information.

As Officer Banks was a party to the faulty communications process with his dispatcher, I find it less than readily apparent that Officer Banks relied "upon information which he had no reason to think was incorrect." *Harvey v. State*, 266 Ga. 671, 673 (469 SE2d 176). An officer in the field is not in a position to know that incorrect information has been entered in a computer at headquarters. But that same officer on patrol is well positioned and may reasonably be expected to know of problems with his communications with his dispatcher. Since it was the accuracy of the radio communications process between Officer Banks and his dispatcher which failed in this

case, it is the integrity of that process which is at issue. "The material inquiry is whether the facts within the officer's knowledge at the time of the arrest constituted reasonably trustworthy information which was sufficient to authorize a prudent person to believe that [a suspect] had committed an offense. [Cit.]" Id. The question then is whether the communications process between Officer Banks and the dispatcher was accurate enough to provide reasonably trustworthy information.

While the accuracy of radio communications systems is not usually a disputed issue, *it is under the facts and circumstances of the case sub judice.* This leads us to the fact that the State apparently failed to recognize any burden to establish the accuracy of the radio communications system used by Officer Banks. For example, could any radio malfunction or interference have contributed to the miscommunication in this case? Officer Banks could reasonably be expected to know the answer to this question, but the trial court, as well as this Court, does not, because no evidence on this issue was introduced by the State.

More significant are the questions concerning whether an adequate protocol was used between Officer Banks and the dispatcher. Officer Banks testified that the dispatcher did not read back to him the tag number he or she was running. While there was considerable colloquy at the motion to suppress hearing acknowledging the prevalence of mental lapses, slips of the tongue, and other human failing which might impair communications, there was no attempt to establish that any sort of communications protocol had been adopted to lend accuracy to the process so that Officer Banks could reasonably rely upon the information he received from his dispatcher. Most importantly, there is no evidence that the protocol actually used by Officer Banks and the dispatcher is usually accurate.

The State having failed to prove the accuracy and reliability of the communications process between Officer Banks and the dispatcher, it follows that it has not been established that Officer Banks could reasonably rely upon information received through that process. Thus, the actions of Officer Banks must be viewed as lacking any proper articulable grounds for the stop of defendant's car and defendant's motion to suppress evidence should have been granted.

I am authorized to state that Judge Ruffin joins in this dissent.

DECIDED MARCH 20, 1998.

*Cecilia M. Cooper,* for appellant.
*Howard S. McKelvey, Jr., Solicitor,* for appellee.