### A96A0452. BOWERS et al. v. THE STATE.
#### (473 SE2d 201)

BLACKBURN, Judge.

Sheena Bowers and Wesley Gilliam filed this interlocutory appeal of the trial court's denial of their motion to suppress evidence of contraband found during a search of their rental vehicle, based upon the illegality of the search, a lack of probable cause to stop appellants' vehicle initially, and the lack of a valid consent to said search.

In reviewing the trial court's decision on a motion to suppress, this Court must ensure that there was a substantial basis for the decision. We construe the evidence most favorably to upholding the trial court's decision and will not disturb the trial court's findings as to disputed facts and questions of credibility unless they are clearly erroneous. See *State v. Jones,* 214 Ga. App. 593 (448 SE2d 496) (1994).

The record reflects that Bowers and Gilliam were traveling northbound on I-95 in a rental van when they were stopped by Deputy Todd of the Camden County Sheriff's Office, who was assigned to traffic enforcement and drug interdiction and was cruising with his drug dog Herman along I-95 at the time of the subject stop. The arresting officer testified that he initially stopped Gilliam for changing lanes without using a turn signal. The officer testified that he observed Gilliam's van from a distance of approximately 100 yards behind the van and there were no other vehicles in the area. There was no evidence that the lane change made by Gilliam was not accomplished with reasonable safety.

After stopping Gilliam, Officer Todd detected no evidence of alcohol or drug consumption by Gilliam and his driver's license appeared in order. Gilliam stood in front of Officer Todd's vehicle in very chilly weather for approximately 20 minutes at around midnight on January 8, 1995, while Officer Todd conducted his investigation. A review of the videotape of the subject incident does not support Officer Todd's contention that Gilliam displayed signs of great nervousness. The tape reflects a normally acting, polite, compliant individual, who was very cold. Officer Todd did not request a driver's license check as

was normally done when checking the status of a minor traffic offender, but rather requested a felony criminal history for a black male. After quizzing the defendants at length about their travels and apparently satisfying himself concerning the "improper" lane change, Officer Todd gave Gilliam an oral warning about changing lanes without using a signal, returned his driver's license to him and concluded the traffic investigation.

As he turned to depart, Officer Todd, who had requested backup, and whose drug dog was on ready, advised Gilliam of the problems they were having with drug traffic on this expressway and requested Gilliam's permission to search the vehicle for drugs. After some comments about being cold and after having already stood in the January night for 20 minutes, Gilliam "consented" to the search. Through the use of Herman, the officer's drug dog, cocaine was found in the trunk of the vehicle, and both Bowers and Gilliam were charged with drug trafficking.

Prior to trial, the defendants filed separate motions to suppress all evidence of any contraband found in the vehicle. The trial court denied their motions, and we granted their application for interlocutory appeal.

" 'Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. . . . This suspicion need not meet the standard of probable cause, but must be more than mere caprice or a hunch or an inclination.' . . . [Cit.]" Id. "An investigatory stop must be justified by some *objective* manifestation that the person stopped is, or is about to be, engaged in criminal activity." (Citations and punctuation omitted; emphasis supplied.) *Brown v. State*, 188 Ga. App. 184, 186-187 (372 SE2d 514) (1988).

The officer testified that the defendants were pulled over for making an improper lane change in violation of OCGA § 40-6-123, which provides in pertinent part: "No person shall . . . change lanes or move right or left upon a roadway *unless* and until *such movement can be made with reasonable safety.* . . . A signal of intention to turn right or left or change lanes *when required* shall be given continuously for a time sufficient *to alert the driver of a vehicle proceeding from the rear in the same direction or a driver of a vehicle approaching from the opposite direction.*" (Emphasis supplied.)

It is clear from this statutory language that the intention of the legislature was that no turn signal is required as long as a lane change can be made with "reasonable safety." Otherwise, the use of the phrase "when required" would be rendered meaningless. The stated purpose of the statute is *to alert other drivers*. Clearly there is no need to alert other drivers when none are present. This purpose

gives meaning to the "when required" phrase contained in the statute. See *Jones*, supra at 594 (no turn signal required when no other driver is on the road); see also *Clark v. State*, 208 Ga. App. 896, 897-899 (432 SE2d 220) (1993) (physical precedent) (no turn signal required when the closest following vehicle was 300 feet behind a driver merging onto an exit ramp). In the instant case, the nearest following car was approximately 100 yards away, and there was no evidence to suggest that the road or traffic conditions were such that it was unsafe for the defendants to have changed lanes without using a turn signal. There was no *objective* basis for a reasonable suspicion that the defendants were, or were about to be, engaged in criminal activity. See *Jones*, supra; see also *Clark*, supra at 899. No other ground for the stop was provided.[1] Therefore, there was no violation of OCGA § 40-6-123, and no basis for the initial stop by Officer Todd. Thus, the stop was unauthorized.

The only remaining issue is whether the "consent" given by Gilliam under the above circumstances was a valid consent so as to authorize the subsequent search of his vehicle which resulted in the discovery of cocaine therein. In evaluating the validity of the consent given in the present circumstances, this Court has held that "in order to eliminate any taint from an involuntary seizure or arrest, there must be proof both that the consent was voluntary and that it was not the product of the illegal detention. Proof of a voluntary consent alone is not sufficient. The relevant factors include the temporal proximity of an illegal seizure and consent, intervening circumstances, and the purpose and flagrancy of the official misconduct." *Brown*, supra at 187.

The present case is controlled by *Brown*, where we held that "[i]n the case sub judice, we find that there was no significant lapse of time between the unlawful detention and the consent, that no intervening circumstances dissipated the effect of the unlawful detention and that the [officer's] conduct had no arguable legal basis. Therefore, we hold that the consent was the product of the illegal detention, and that the taint of the unreasonable stop was not sufficiently attenuated." Id.; see also *Tarwid v. State*, 184 Ga. App. 853, 856 (363 SE2d 63) (1987).

While Gilliam's consent was voluntary, under the standard provided by *Brown* it was the product of the illegal detention for the same reasons outlined therein. As a result, the trial court's denial of the defendants' motion to suppress was clearly erroneous under the law.

---

[1] Although the officer also testified that the defendants' vehicle weaved into the emergency lane, this did not occur until after the officer had activated his blue lights, and was not listed as a ground for a stop.

Drug trafficking is without question one of the major concerns of our society, and the policing of such activities is a dangerous and often thankless job. While it is with deep regret that this Court ever reverses a criminal case, such as the present case, where drugs were without question in the possession of the defendants, we are a nation of laws, and it is the duty of this Court to ensure that the State itself follows the laws of criminal procedure in the enforcement of our criminal statutes for the protection of all citizens. The law cannot be bent because of the culpability of the defendant, for that case would then become the precedent by which the truly innocent would be incarcerated. This is the price we pay to ensure the integrity and fairness of our criminal justice system and to ensure that the government conducts itself within the constitutional and statutory constraints provided by law.

*Judgment reversed. Birdsong, P. J., concurs. Beasley, C. J., concurs in the judgment only.*

DECIDED JUNE 26, 1996.

*Lane & Crowe, Robert L. Crowe*, for appellants.
*Glenn Thomas, Jr., District Attorney, George C. Turner, Jr., Assistant District Attorney*, for appellee.