[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15555
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 2, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00376-CR-CAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES WOODS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 2, 2010)

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Charles Woods appeals his convictions for possession of a firearm by a convicted felon, possession with intent to distribute cocaine base, and possession of a firearm during the commission of a crime. On appeal, Woods limits the

arguments in his principal brief to challenging the district court's denial of his motion to suppress evidence based on an allegedly-unconstitutional initial traffic stop of his vehicle. After careful review, we affirm.[1]

"A district court's ruling on a motion to suppress presents mixed questions of law and fact." United States v. Ramirez-Chilel, 289 F.3d 744, 748-49 (11th Cir. 2002). We review "findings of fact for clear error and the application of the law to those facts de novo." United States v. Martinelli, 454 F.3d 1300, 1306 (11th Cir. 2006). In reviewing the district court's ruling, we must construe the facts in the light most favorable to the prevailing party below. United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006).

The Fourth Amendment protects the right of persons to be free from unreasonable searches and seizures. U.S. Const. amend. IV. A traffic stop constitutes "a seizure within the meaning of the Fourth Amendment," and "is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion." United States v. Spoerke, 568 F.3d 1236, 1248 (11th Cir. 2009) (quotations omitted). "Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are

---

[1] In addition, we DENY Woods' motion to supplement the record on appeal.

sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." United States v. Jimenez, 780 F.2d 975, 978 (11th Cir. 1986) (quotation omitted). We have held that there is probable cause to conduct a traffic stop where an officer observes a defendant commit a non-criminal traffic violation such as speeding or making an illegal lane change. United States v. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008) (holding that the officer had probable cause to stop the defendant who failed to signal a lane change); United States v. Pruitt, 174 F.3d 1215, 1217 n.1 (11th Cir. 1999) (noting that probable cause existed to conduct a traffic stop because the defendant was speeding).

We reject Woods' claim that his Fourth Amendment rights were violated when police officers pulled him over, because there were a variety of valid bases for the traffic stop. First, the officers had probable cause to conduct a traffic stop of Woods' vehicle based on his actual traffic violation of failing to signal while changing lanes. The Official Code of Georgia Annotated § 40-6-123 provides:

> (a) No person shall . . . change lanes or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate and timely signal in the manner provided in this Code section;

> (b) A signal of intention to turn right or left or change lanes when required shall be given continuously for a time sufficient to alert the driver of a vehicle proceeding from the rear in the same direction or a driver of a vehicle approaching from the opposite direction.

3

O.C.G.A. § 40-6-123(a) and (b).  The Georgia Court of Appeals has interpreted O.C.G.A. § 40-6-123 to mean that no turn signal is required as long as a lane change can be made with "reasonable safety."  Bowers v. State, 473 S.E.2d 201, 203 (Ga. Ct. App. 1996); see Buffington v. State, 494 S.E.2d 272, 273 (Ga. Ct. App. 1997) (holding that an officer had probable cause to conduct a traffic stop because the defendant changed lanes without signaling while "in front of another vehicle" in violation of O.C.G.A. § 40-6-123).

In Bowers, the Georgia Court of Appeals held that a lane change can be made with reasonable safety when there are no other drivers present, and as a result, a defendant did not violate O.C.G.A. § 40-6-123 when he made a signal-less lane change and the nearest car was 100 yards away.  473 S.E.2d at 203-04.  In contrast, the Georgia Court of Appeals has consistently held that a defendant violates § 40-6-123 when he makes a signal-less lane change while there are other cars traveling nearby.  See, e.g., Salinas-Valdez v. State, 624 S.E.2d 278, 280 (Ga. Ct. App. 2005) (holding that a defendant violated § 40-6-123 for making a signal-less lane change that resulted in him pulling in front of the police car while traffic was "medium heavy to heavy"); Tukes v. State, 511 S.E.2d 534, 536 (Ga. Ct. App. 1999) (holding that a signal-less lane change violated § 40-6-123 when there were other cars nearby).

4

Here, the district court did not err in finding that the officers had probable cause to conduct a traffic stop of Woods's vehicle based on his actual traffic violation of failing to signal while changing lanes. As interpreted by the Georgia Court of Appeals, O.C.G.A. § 40-6-123 mandates a vehicle to signal before changing lanes when other drivers are in the vicinity. See O.C.G.A. § 40-6-123; Salinas-Valdez, 624 S.E.2d at 280; Tukes, 511 S.E.2d at 536; Buffington, 494 S.E.2d at 273. Thus, based on the plain language of the statute and Georgia case law, Woods' argument that O.C.G.A. § 40-6-123 does not require a driver to use a signal when changing lanes near other cars fails.

Moreover, as the record shows, Woods violated O.C.G.A. § 40-6-123 by failing to signal when he changed lanes in "at least medium" traffic volume while there were other cars traveling nearby and a police car was approximately two car lengths (30 feet) behind him.[2] As a result, Woods' reliance on Bowers, 473 S.E.2d at 203-04, and Clark v. State, 432 S.E.2d 220 (Ga. Ct. App. 1993), is misplaced, since Taylor's car was only about 30 feet away from Woods' car.

And Woods' remaining argument -- that he was never cited for changing lanes without a turn signal -- is meritless because there is no constitutional requirement that a police officer issue a traffic citation; the police officer can pull a

---

[2] One car length is approximately 15 feet. See http://www.usatoday.com/money/autos/2007-07-15-little-big-cars_N.htm.

5

car over if he simply observes that car committing a traffic infraction. See Harris, 526 F.3d at 1338. Since Officer Taylor testified that he personally observed this traffic infraction, he had probable cause to conduct the initial stop of Woods's vehicle. See id. While Woods challenges Taylor's credibility with regard to the illegal lane change, he only does so in his reply brief to this Court, which is insufficient to properly raise Taylor's credibility as in issue on appeal. See United States v. Levy, 379 F.3d 1241, 1244 (11th Cir. 2004) (holding that this Court does not consider issues raised for the first time in a reply brief).

Next, we are unpersuaded by Woods' claim that the police officers did not have a reasonable suspicion that he was driving on a suspended license as a result of a prior DUI conviction when they stopped him, and thus, his suspended license was not a valid reason to pull over his vehicle. Reasonable suspicion is determined by the collective knowledge of the police officers. See United States v. Glinton, 154 F.3d 1245, 1257 (11th Cir. 1998). Under Georgia law, a person is prohibited from driving with a suspended license. O.C.G.A. § 40-5-121(a). A person who is convicted for a first-offense DUI has his license suspended for 12 months. O.C.G.A. § 40-5-63(a)(1). Normally, that person may reapply for reinstatement after 120 days. Id. However, if the DUI was for a "drug related offense pursuant

6

to Code Section 40-6-391," then the license-suspension period must last at least 180 days. See O.C.G.A. §§ 40-5-63, 40-5-75(a)(1), (e).

Assuming arguendo that Woods's license was suspended for only 120 days, the day on which Woods was pulled over and arrested took place 122 days after his license was suspended, and it was the first business day on which he could have applied to have his license reinstated. See O.C.G.A. § 40-5-63(a)(1). Based on this timeline, it was reasonable for the police officers to believe that Woods had not yet applied to have his license reinstated, especially in light of the fact that they knew that Woods had not troubled himself to even appear for the DUI hearing that caused his license to be suspended. As such, Woods's suspended license provided another valid basis for the police to conduct a traffic stop of his vehicle.[3]

Finally, we disagree with Woods' claim that the police officers could not have used the information that they obtained from a confidential informant ("CI") as a basis for pulling over his vehicle. As discussed above, a police officer must have a reasonable suspicion of wrongdoing before he can stop a car. See Spoerke, 568 F.3d at 1248. A tip from a CI can give rise to reasonable suspicion if that tip is

_____

[3] To the extent that Woods argues that he had a limited use driving permit and should not have been pulled over, he failed to present this evidence to the district court. He also never mentioned his limited use driving permit to the police officers that pulled him over, and, instead of providing his license or a driving permit, he showed them his identification card. Moreover, the Georgia statute that permits a DUI convict to obtain a limited use driving permit does not permit the holder of that permit to drive to a car wash. See O.C.G.A. § 40-5-64(c), (d) (listing conditions that govern driving with a limited use driving permit).

reliable.  Ala. v. White, 496 U.S. 325, 330 (1990).  In White, the police received an anonymous phone call informing them that the defendant "would be leaving 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine."  Id. at 327.  The police officers arrived at the 235 building, where they observed the defendant entering the station wagon, and they then detained the defendant once she drove to Dobey's Motel.  Id.  The Supreme Court held that the anonymous tip was reliable because:

> the anonymous tip contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted. The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of the former. Anyone could have "predicted" that fact because it was a condition presumably existing at the time of the call. What was important was the caller's ability to predict respondent's future behavior, because it demonstrated inside information -- a special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop.

8

Id. at 332 (internal citations and quotations omitted). Accordingly, the Supreme Court held that the police did not violate the Fourth Amendment when they briefly detained the defendant. Id.

The CI in this case called the police department at 10:00 a.m. and accurately predicted that Woods would be driving a black Hyundai Azera in the Georgia Dome area around noon. This situation is analogous to the factual scenario that the Supreme Court addressed in White, and because the CI in this case informed the police officers that Woods would be transporting illegal narcotics, this information was a valid basis for pulling over Woods's car. Accordingly, because the traffic stop of Woods's car was supported by a number of valid bases, the district court did not err in denying Woods's suppression motion, and we affirm its decision.[4]

**AFFIRMED.**

---

[4] As for Woods' claim that the police officers could not have pulled him over for failing to use a turn signal when he pulled out of the private driveway that was part of a car wash, we need not decide the applicability of § 40-6-123(a) to private driveways because in this case, the traffic stop of Woods's car was supported by a number of valid reasons, as discussed above.