COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35304-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | ORDER AMENDING OPINION |
| | ) | |
| DAVID JOSEPH BROWN, | ) | |
| | ) | |
| Petitioner. | ) | |

IT IS ORDERED the opinion filed January 17, 2019, is amended as follows:

The first paragraph, second sentence on page one that reads:

This appeal asks if this statute compels a driver, who moved left from a middle lane to a dedicated left turn lane while signally his intention to change lanes, to reactivate his turn signal before turning left from the reserved turn lane.

SHALL BE AMENDED TO READ: This appeal asks if this statute compels a driver, who moved left from a middle lane to a dedicated left turn lane while signaling his intention to change lanes, to reactivate his turn signal before turning left from the reserved turn lane.

PANEL: Judges Fearing, Lawrence-Berrey, Pennell

FOR THE COURT:

_____
ROBERT LAWRENCE-BERREY,
Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35304-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| DAVID JOSEPH BROWN, | ) | |
| | ) | |
| Petitioner. | ) | |

FEARING, J. — RCW 46.61.305(2) declares that a driver must, "when required,"
continuously signal an intention to turn or cross lanes during at least the last one hundred
feet traveled before turning or moving lanes. This appeal asks if this statute compels a
driver, who moved left from a middle lane to a dedicated left turn lane while signally his
intention to change lanes, to reactivate his turn signal before turning left from the
reserved turn lane. We hold that the statute only requires use of a signal in circumstances
that implicate public safety. Because the circumstances surrounding David Brown's left-
hand turn from a left-turn-only lane did not jeopardize public safety, we hold that
Trooper Mason Acheson lacked grounds to stop David Brown's vehicle. We affirm the
district court's ruling that suppressed evidence resulting from the stop of Brown and

reverse the superior court's reversal of the district court's decision. In doing so, we educate ourselves in turn signal technology.

FACTS

We borrow most facts from the district court's findings of fact. On the evening of March 22, 2015, Trooper Mason Acheson patrolled the streets of Kennewick. At 10:15 p.m., while traveling eastbound on Clearwater Avenue, Trooper Acheson saw appellant, David Brown, driving a Toyota Tundra, turn right from Huntington Street onto Clearwater Avenue, a four-lane arterial. During the turn, the left side tires of the Tundra, a large pickup, crossed the white dashed divider line between the two eastbound lanes by one tire width for a brief moment, after which the vehicle fully returned to its lane of travel. Brown's diversion across the dividing line did not endanger any travel. Acheson observed Brown's tires cross the white dashed divider line, and he continued to view Brown's driving thereafter.

Shortly after entering Clearwater Avenue, David Brown signaled his intent to change lanes, and to move to the left or inner eastbound lane, by activating his left turn signal that blinked numerous times. Brown entered the inner lane of the two lanes.

Soon David Brown approached the intersection of Clearwater Avenue and Highway 395, where the eastbound lanes widen to three lanes. The innermost of the three lanes becomes a designated left turn only lane. Brown again wished to change

2

lanes so he could turn left. Brown signaled his intent to move left into the dedicated turn lane. Brown maneuvered his vehicle into the dedicated turn lane, at which point the left turn signal cycled-off.

The parties employ and the district court incorporated the term "cycle off," a term with which we were not familiar, before this appeal, in the context of vehicle signal lights. The turn signal for most cars includes a self-cancelling feature that returns the horizontal signal lever to the neutral, or no signal, position as the steering wheel approaches the straight forward position after completion of a turn. We assume "cycle off" refers to the activation of the self-cancelling feature. Most cars now incorporate the additional turn signal feature of a spring-loaded momentary signal position activated when the driver partially depresses or raises the horizontal stalk. The signal then operates however long the driver holds the lever partway toward the left or right turn signal detent. A driver typically lowers or raises the spring-loaded momentary signal feature when changing lanes as opposed to executing a turn from one street to another. The parties' nomenclature and the district court's findings of fact suggest David Brown did not employ the momentary signal when changing lanes on the second occasion while traveling east on Clearwater Avenue.

David Brown stopped his vehicle in the dedicated left turn lane while awaiting the light to turn green. He did not reactivate his turn signal. Trooper Mason Acheson pulled

behind Brown. No other traffic was present on eastbound Clearwater Avenue. When the light turned green, Brown turned left onto northbound Highway 395. Trooper Mason Acheson then actuated his patrol vehicle's emergency light and stopped Brown.

Trooper Mason Acheson stopped David Brown based on Brown's crossing the eastbound lanes' divider line during his turn from Huntington Street onto Clearwater Avenue. He did not stop Brown based on Brown's failure to signal his left turn onto Highway 395. After stopping Brown, Trooper Acheson investigated Brown for suspicion of driving under the influence of intoxicants. Acheson arrested Brown for driving under the influence.

## PROCEEDINGS

The State of Washington charged David Brown with driving while under the influence of intoxicants. Brown filed a motion to suppress evidence garnered from the stop of his car by Trooper Mason Acheson. He argued that the state trooper lacked cause to stop his vehicle. During the suppression hearing, the district court entertained testimony from Mason Acheson.

The State principally contended, before the district court, that State Trooper Mason Acheson possessed probable cause to stop David Brown because of Brown's crossing of the dashed dividing line between the two eastbound lanes on Clearwater Avenue when turning right from Huntington Street. The district court concluded that,

4

because Brown, as reasonably as practical, kept his vehicle within his lane when turning

right onto Clearwater Avenue, the crossing of the dividing line on the avenue did not

violate the traffic code. Therefore, Trooper Acheson lacked probable cause to stop

Brown for crossing the line.

The State of Washington moved for reconsideration and added, based on the

suppression hearing testimony of Trooper Mason Acheson, that Acheson had additional

reason to stop David Brown since Brown violated RCW 46.61.305 when turning left onto

Highway 395. The statute references use, for a continuous one hundred feet, of a turn

signal before turning left or right.

With the motion for reconsideration, the district court needed to determine if

David Brown's failure to activate his turn signal before turning left onto the highway

afforded probable cause. The district court reasoned:

> 3. Based upon the evidence presented, there was insufficient time
> and distance for the Defendant to comply with the signal statute while
> executing the lane change to enter the dedicated left turn lane at the
> intersection of Clearwater Ave. and SR 395. The Defendant complied with
> the signal statute as best he could and due to the impossibility to comply
> with the signal statutes requirement of signaling for 100 feet prior to
> making a lane change the Defendant cannot be in violation of said
> provision when it was impossible to comply with such.
> 4. The intent of turn signals is to notify other drive[r]s where the
> Defendant was intending to travel. Trooper Acheson's testimony
> confirmed that not only did he kn[o]w where the Defendant intended to
> travel but in fact the Defendant did travel in the direction Trooper Acheson
> suspected he would go and[,] therefore, [t]he Defendant wasn't required to

5

re-indicate the direction he was turning from the dedicated left turn lane at the intersection of east bound Clearwater Ave. and north bound SR 395 as the Defendant had already signaled his intent to enter that lane prior to entering it.

Clerk's Papers (CP) at 13. The district court concluded that, because Brown violated no traffic law, Trooper Acheson lacked probable cause to initiate the traffic stop. The district court suppressed all evidence gained from the stop and thereafter dismissed the prosecution.

The State of Washington appealed the dismissal to the superior court. The superior court adopted the district court's findings of fact. Nevertheless, the superior court held that the district court erred when suppressing the evidence of intoxication gathered after the traffic stop. According to the superior court, David Brown violated RCW 46.61.305(2), which requires a continuous signal of one's intent to turn during the last one hundred feet before turning left. Because Trooper Mason Acheson observed Brown's failure to continuously signal before turning left onto the highway, Acheson gained reasonable suspicion of a traffic infraction. The superior court remanded the case to the district court for further proceedings.

David Brown sought discretionary review, before this court, of the superior court's decision. Our court commissioner granted review. Comm'r's Ruling, *State v. Brown*, No. 35304-4-III (Wash. Ct. App. Oct. 17, 2017).

LAW AND ANALYSIS

In response to David Brown's appeal, the State does not argue that Trooper Mason Acheson held probable cause to stop Brown based on his clumsy right turn onto Clearwater Avenue from Huntington Street. Therefore, this appeal addresses only whether Acheson possessed probable cause to stop Brown because of Brown's failure to signal his left turn onto Highway 395.

We previously outlined the facts based on the district court's findings of fact as adopted by the superior court. Neither party challenges the findings of fact before this court. Unchallenged findings of fact are verities on appeal. *State v. Luther*, 157 Wn.2d 63, 78, 134 P.3d 205 (2006).

A law enforcement officer may conduct a warrantless traffic stop under article I, section 7 of the Washington Constitution as an investigative stop if based on at least a reasonable articulable suspicion of either criminal activity or a traffic infraction. *State v. Arreola*, 176 Wn.2d 284, 292-93, 290 P.3d 983 (2012). We must determine whether David Brown's conduct provided reasonable suspicion of a traffic violation.

The primary issue on appeal is whether, under RCW 46.61.305, a driver must reinitiate his turn signal after he signals to enter a left-turn-only lane, enters the lane, and the turn signal cancels before the turn from the lane. Subsections one and two of RCW 46.61.305 declare:

> **When signals required—Improper use prohibited.**  (1) No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal *in the manner hereinafter provided*.
> (2) A signal of intention to turn or move right or left *when required* shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

(Emphasis added.)  The issue on appeal demands that we indirectly determine what constitutes an appropriate signal "in the manner hereinafter provided" under subsection 1 of the statute and directly assess "when" a signal is "required" under subsection 2 of the statute.

David Brown contends that the statute did not require him to reactivate his left turn signal as he had already indicated his intent to turn left when he signaled to enter the dedicated turn lane and entered the lane.  Brown emphasizes that Trooper Mason Acheson knew where Brown intended to travel, and Brown executed the turn with reasonable safety.

The State argues that the heading of RCW 46.61.305 and the language in subsection 1 of the statute define the phrase "when required" found in subsection 2.  The heading contains the phrase "when signals required."  In turn, subsection 1 demands that a signal be given before any person turning a vehicle or moving right or left on a roadway.  Subsection 1 also reads that the signal should be given "in the manner hereinafter provided."  According to the State, subsection 2 establishes "the manner

8

hereinafter provided" by demanding signaling for one hundred consecutive feet before the turn. The State observes that RCW 46.61.305 does not read that an intent to turn may be signaled solely by traveling in an earmarked turn lane. According to the State, drivers traveling from the other three directions to the intersection are not apprised of the driver's intent to turn absent a signal.

When interpreting statutory provisions, this court primarily seeks to effectuate the intent of the legislature. *State v. Sullivan*, 143 Wn.2d 162, 174-75, 19 P.3d 1012 (2001). In attempting to discern the legislative intent behind RCW 46.61.305, at least within the context of this appeal, we first review the history behind the traffic signal statute. Second, we examine case law from other jurisdictions that interprets the meaning of "when required" contained in code provisions similar to that of Washington's RCW 46.61.305. Third, we parse the wording of RCW 46.61.305.

Legislative History

The Washington Legislature patterned Title 46 RCW after the 1962 Uniform Vehicle Code (UVC). *City of Seattle v. Williams*, 128 Wn.2d 341, 349 n.9, 908 P.2d 359 (1995). The 1965 version of RCW 46.61.305(2) was identical to § 11-604(b) of the UVC. LAWS OF 1965, Ex. Sess., ch. 155, § 43(2). The UVC section read:

> A signal of intention to turn right or left *when required* shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.

9

Uniform Vehicle Code § 11-604(b) (1968) (emphasis added). In 1975, the Washington

Legislature added the words "or move" to arrive at the present-day form of the statute, "A

signal of intention to turn *or move* right or left . . . ." LAWS OF 1975, ch. 62, § 30

(emphasis added).

At least twenty states have adopted language identical to UVC § 11-604(b). Nat'l

Comm. on Uniform Traffic Laws & Ordinances, TRAFFIC LAWS ANNOTATED § 11-

604(b), statutory annot. (1979) (TLA). Five other states adopted the identical language

absent the phrase "when required." TLA § 11-604(b), statutory annot. n.1 (1979). With

regard to the difference between those versions with the phrase "when required" and

those without the phrase, the drafters of the UVC wrote that use of the phrase "is not

important." TLA, § 11-604(b), statutory annot. n.1 (1979). This excerpt from the

drafters' notes supports the State's argument that "when required" can be read in context

of RCW 46.61.305(1), which states that a person must signal when turning or moving to

the right or the left on a roadway.

Foreign Decisions

We review decisions emphasized by the parties. David Brown forwards *State v.*

*Dixon*, 206 S.W.3d 587 (Tex. Crim. App. 2006) and *Bowers v. State*, 221 Ga. App. 886,

473 S.E.2d 201 (1996) as supportive of his position. The State highlights *Wehring v.*

10

No. 35304-4-III
*State v. Brown*

State, 276 S.W.3d 666 (Tex. App. 2008), *State v. Bea*, 318 Or. 220, 864 P.2d 854 (1993), and *United States v. Garcia*, 178 F. Supp. 3d 1250 (S.D. Ala. 2016) in support of its position. We adjudge *Bowers* and *Garcia* to best delineate the parties' respective positions, and we discuss those cases now. We analyze the other three decisions in an appendix because of important distinctions from this appeal present in the reported cases.

In *Bowers v. State*, 221 Ga. App. 886, 473 S.E.2d 201 (1996), the Georgia intermediate appellate court addressed whether Deputy Todd made a lawful traffic stop. As William Gilliam drove a van on an interstate highway, he changed lanes without signaling. Deputy Todd saw the lane change from a distance of one hundred yards. No other vehicles were present. The State presented no evidence that Gilliam changed lanes unsafely. After the stop, a drug dog smelled cocaine in the trunk of the stopped van. On prosecution for possession of a controlled substance, driver Gilliam and his passenger Sheena Bowers filed a motion to suppress evidence of the controlled substance on the basis of an unlawful stop.

A Georgia statute declared:

> (a) No person shall . . . change lanes or move right or left upon a roadway *unless* and until *such movement can be made with reasonable safety.* No person shall so turn any vehicle without giving an appropriate and timely signal *in the manner provided in this Code section*.
> (b) A signal of intention to turn right or left or change lanes *when required* shall be given continuously for a time sufficient *to* alert the driver

11

of a vehicle proceeding from the rear in the same direction or a driver of a vehicle approaching from the opposite direction.

GA. CODE ANN. § 40-6-123 (emphasis added). The Georgia court reasoned that the legislature did not intend to require a turn signal if the lane change could be executed with "reasonable safety." Otherwise, the use of the phrase "when required" would be rendered meaningless. Activating a turn signal seeks to alert other drivers to the turn. According to the court, this purpose should control when interpreting the phrase "when required." Since the only car was one hundred yards away, Gilliam did not need to signal his lane change. In turn, Deputy Todd lacked an objective basis for the traffic stop. One wonders if the Georgia court would have ruled differently if Gilliam drove amidst a gaggle of traffic.

The federal district court in, *United States v. Garcia*, 178 F. Supp. 3d 1250 (S.D. Ala. 2016), rejected the interpretation rendered in *Bowers* of the turn signal statute, while faulting the Georgia appellate court for overlooking the history behind the Uniform Vehicle Code. The Alabama version of the UVC-patterned signal requirement read:

> (a) No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal *in the manner hereinafter provided*.
> (b) A signal of intention to turn right or left *when required* shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.

Ala. Code § 32-5A-133 (emphasis added). The *Garcia* court observed that the phrase

"when required" found in subsection (b) of the Alabama statute had been in UVC § 11-

604(b) since 1944. At the time the phrase was added to the UVC, § 11-604(a) required a

signal only when "other traffic may be affected by such movement." In other words, the

first paragraph did not mention the need to always signal. According to the federal lower

court, the drafters of the UVC amended § 11-604(a) in 1962 to always require a signal

when changing lanes but failed to remove "when required" in § 11-604(b). The *Garcia*

court reasoned that, although its ruling rendered the language "when required"

superfluous, drafters of UVC, § 11-604(a) and the Alabama statute intended to always

require a signal. The federal court rejected Pedro Picasso Garcia's motion to suppress

drugs obtained during search of his vehicle after a traffic stop. A law enforcement officer

stopped Garcia's car when he executed a lane change on an interstate highway without

signaling.

Words and Structure of RCW 46.61.305

We now examine the precise language of RCW 46.61.305(1) and (2). We repeat

the subsections and highlight the critical words:

> (1) No person shall turn a vehicle or move right or left upon a roadway
> unless and until such movement can be made with reasonable safety nor without
> giving an *appropriate* signal *in the manner hereinafter provided*.
> (2) A signal of intention to turn or move right or left *when required* shall be
> given continuously during not less than the last one hundred feet traveled by the

13

vehicle before turning.

(Emphasis added.)

In reading the legislature's expressions in RCW 46.61.305, we first note the circular nature of the first two subsections of the statute. Subsection one demands an "appropriate signal in the manner hereinafter provided." Subsection one does not expressly direct the reader to the statute or statutory subsection where the reader can find "the manner hereinafter provided." In other words, subsection one does not identify the location of the "hereinafter." Subsection two may constitute the "manner hereinafter provided," but the reader cannot be certain. Assuming subsection two comprises the "hereinafter," the subsection only demands a signal "when required." Presumably the reader must then return to subsection one to discern when the signal is required, but subsection one directs the reader to the "hereinafter." The reader remains guessing as to when the statute requires a signal.

As previously noted, the State argues that RCW 46.61.305(1) provides that turn signals are always required prior to a vehicle turn on a roadway and RCW 46.61.305(2) merely sets forth the manner in which turn signals are to be deployed. The dissent agrees with this approach. We disagree.

The State in essence contends that the words "when required," as set forth in RCW 46.61.305(2) are mere surplusage. According to the State, a turn signal is always

14

required prior to a turn. This was the position taken by the United States District Court in *United States v. Garcia*, 178 F. Supp. 3d 1250 (S.D. Ala. 2016), previously discussed. *Garcia* analyzed the history behind the Uniform Vehicle Code. According to the *Garcia* court, the phrase "when required" entered the code when the code required a turn signal only when "other traffic may be affected by such movement." *United States v.* Garcia, 178 F. Supp. 3d at 1253 (quoting TLA § 11-604). The code drafters amended the code to always require a signal when changing lanes but failed to remove "when required."

We note that the drafters of the Uniform Vehicle Code amended the relevant section in 1962. The Washington State Legislature amended RCW 46.61.305 twice after 1962 and in 1965 and 1975. The legislature could have and should have omitted the words "when required" from subsection 2 of the statute if it wished to do so during the amendments. We further observe that the Washington State Legislature adopted the language "without giving an appropriate signal in the manner hereinafter provided" for the first time in subsection 1 of the statute in 1965, and the legislature first adopted the language "when required" in subsection 2 also in the same 1965 enactment. LAWS OF 1965, EX. SESS., 1965, ch. 155, § 43. So, the two provisions entered the statute at the same time.

The dissent emphasizes the Uniform Vehicle Code drafters' comment that the words "when required" lack importance. The dissent's emphasis might triumph if the

code drafters, not the Washington State Legislature, passed RCW 46.61.305. We must assume the state legislature intended some meaning with the phrase. One wonders why the uniform code drafters have neglected to remove the expression during the last fifty years if the drafters deem the phrase unimportant.

The *United States v. Garcia* holding assumes that the legislature committed a mistake by keeping "when required" within RCW 46.61.305(2). Nevertheless, our duty is to interpret the statute's vague or ambiguous provisions in a manner consistent with its objective, and not to correct legislative mistakes. *State ex rel. Hagan v. Chinook Hotel, Inc.*, 65 Wn.2d 573, 578-79, 399 P.2d 8 (1965). Rewriting the statute and correcting any inconsistency remains with the legislature. *Millay v. Cam*, 135 Wn.2d 193, 203, 955 P.2d 791 (1998).

We cannot ignore the words "when required," found in RCW 46.61.305(2). The legislature's decision to retain the words "when required" in the statute suggests some circumstances exist, during which a turn signal is not required. Otherwise, the term "when required" would bear no meaning. We must construe an act as a whole, giving effect to all the language used. *Cannabis Action Coalition v. City of Kent*, 180 Wn. App. 455, 477, 322 P.3d 1246 (2014), *aff'd*, 183 Wn.2d 219, 351 P.3d 151 (2015). To this end, our task is to discern when circumstances do not require use of a turn signal, not to ignore the language chosen by the legislature.

16

In addition, continuous use of a turn signal prior to a turn is not always feasible, given the mechanical nature of turn signal devices. We note that David Brown might have encountered difficulty in continuously signaling when he moved to the left-turn-only lane. When he moved into the left turn lane from what became the middle lane and thereafter straightened his car, his turn signal "cycled off" or ended. He would have needed to activate his signal again, but some time, no matter how short, would have elapsed between the ending of the signal and its recommencement. The district court noted this phenomenon in its ruling. Of course, Brown could have employed the momentary blinker function as he moved from lane to lane and immediately depressed the standard signal function once in the dedicated turn lane without significant cessation in the signaling. We doubt, however, that the legislature wished to distinguish between the momentary spring-loaded function and the standard function of the turn signal when determining the need to signal or that the legislature investigated the length in the pause of continuous signaling resulting from the driver employing the different functions. We doubt the legislature expected the driver to know that he or she should use the momentary function when moving into the dedicated turn lane and then switch to the standard function once in the turn lane.

RCW 46.61.305, entitled "When signals required—Improper use prohibited," opens with a mandate that drivers execute turns in a manner consistent with public safety.

17

This link between the required use of a turn signal and public safety informs our interpretation of the statute. A driver generally cannot safely change directions on a roadway "unless" he or she notifies others in the area of this intent by use of a signaling device. Even when a driver attempts a turn from a dedicated turn lane, a turn signal may be necessary in order to alert other drivers and pedestrians, who may not be in a position to discern the nature of the dedicated lane. Given that vehicular turns are often made in the vicinity of other traffic, the public safety requirement of RCW 46.61.305(1) contemplates a general requirement that a driver use a turn signal prior to changing the direction of travel. Because public safety is the only true requirement that can be gleaned from RCW 46.61.305(1), we hold that a turn signal is only "required" as contemplated by subsection 2 when public safety is implicated, as indicated in subsection 1. In safety-related circumstances, a turn signal must "be given continuously during not less than the last one hundred feet traveled by the vehicle before turning." RCW 46.61.305(2). However, if a left- or right-hand turn can be made safely without the use of a signal, no signal is required.

The facts on appeal establish that no traffic, other than the trailing state trooper, was on the roadway when David Brown used a designated left-hand turn lane to travel from Clearwater Avenue onto Highway 395. His execution of a turn without signaling caused no possible concern for public safety. Given this circumstance, Brown's failure to

18

utilize a turn signal did not violate the plain terms of RCW 46.61.305 and did not justify

Trooper Mason Acheson's traffic stop.

## Mistake in Law

The State argues that, even if we rule that David Brown did not violate RCW

46.61.305(2), Trooper Mason Acheson reasonably believed that Brown breached the

statute and a law enforcement officer's reasonable belief creates probable cause. Stated

differently, Mason Acheson may have made a mistake of law, but he made a reasonable

mistake of law. In *Heien v. North Carolina*, ___ U.S. ___, 135 S. Ct. 530, 190 L. Ed. 2d

475 (2014), the nation's high Court held that a mistake in law, if reasonable, can create

reasonable suspicion for purposes of a traffic stop. In so ruling, the Court characterized a

mistake of law as being the same as a mistake of fact for purposes of the officer forming

a reasonable suspicion. Under United States Supreme Court Fourth Amendment

jurisprudence, an officer's mistake of fact does not negate reasonable suspicion for an

investigation.

David Brown relies on article I, section 7 of the Washington Constitution, in

addition to the Fourth Amendment of the United States Constitution. The Washington

Supreme Court has never incorporated an officer's innocent mistake of fact or good faith

into the reasonable suspicion analysis for purposes of the state constitution. *State v.

Afana*, 169 Wn.2d 169, 179-80, 233 P.3d 879 (2010); *State v. Creed*, 179 Wn. App. 534,

19

No. 35304-4-III
*State v. Brown*

541-43, 319 P.3d 80 (2014); *State v. Rose*, 75 Wn. App. 28, 35-36, 876 P.2d 925 (1994), *rev'd on other grounds*, 128 Wn.2d 388, 909 P.2d 280 (1996). The United States Constitution prohibits unreasonable searches and seizures; whereas, our state constitution goes further and requires actual authority of law before the State may disturb the individual's private affairs. *State v. Day*, 161 Wn.2d 889, 893, 168 P.3d 1265 (2007). Therefore, we conclude that the Washington Supreme Court would not permit a mistake of law to be grounds for reasonable suspicion and rule accordingly. The State provides no case law to the contrary.

## CONCLUSION

We reverse the superior court. We reinstate the district court's grant of David Brown's motion to suppress and the district court's dismissal of the charge of driving while under the influence.

_____
Fearing, J.

I CONCUR:

_____
Pennell, J.

20

APPENDIX

The reviewing court, in a muddled decision in *State v. Dixon*, 206 S.W.3d 587 (Tex. Crim. App. 2006), upheld the suppression of evidence gathered during a traffic stop. The court held the stop leading to the discovery of the controlled substance to be unlawful. The arresting officer observed that Richard Dixon executed a right turn from a right turn lane and later a left turn from a left turn lane, each time without signaling. David Brown contends that *Dixon* stands for the proposition that a turn signal is not required when the turn is made from a dedicated left or right turn lane. We disagree. The trial court and the reviewing court focused on the officer trailing Dixon for 3.2 miles after the allegedly unlawful turns. The ruling implies that the officer conducted a pretextual stop.

In *Wehring v. State*, 276 S.W.3d 666, 670 (Tex. App. 2008), the Texas court disagreed with the holding in *State v. Dixon*. The *Wehring* court held that a turn signal is required for one hundred feet even when the driver is in a dedicated turn lane. Jeremy Wehring failed to employ a turn signal when turning from a dedicated right turn lane. The State charged Wehring with driving while intoxicated. Wehring alleged that the initial traffic stop was illegal. The Texas statute read:

> "(a) An operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position.
>
> "(b) An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn."

*Wehring v. State*, 276 S.W.3d at 670 (quoting TEX. TRANSP. CODE ANN. § 545.104).

Subsection (b) of the statute read similarly to RCW 46.61.305(2) except the statute omitted the phrase "when required," language we deem critical to our reading of the Washington statute. The Texas reviewing court affirmed the legality of the traffic stop. According to the court, the statute included no exception for those situations in which the driver has only one direction to turn. The statute provided a bright line rule. Since Wehring violated the traffic statute, the law enforcement officer held cause to stop him.

In *State v. Bea*, 318 Or. 220, 864 P.2d 854 (1993), the State charged Randall Bea with possession of a controlled substance and failure to present a driver's license after a law enforcement officer stopped him for failure to signal a traffic turn. The officer followed Bea as he drove north on Kerby Avenue. After several blocks, Bea came to an L-shaped intersection of Kerby Avenue and Sumner Street. Kerby terminated at its intersection with Sumner. Sumner also terminated at the intersection. No stop sign controlled the intersection. Bea went left from Kerby onto Sumner, the only direction in which he could have continued to travel on a public street. He did not signal.

22

One Oregon statute, OR. REV. STAT. (ORS) § 811.335, reviewed in *State v. Bea*

read:

> "(1) A person commits the offense of making an unlawful or unsignaled turn if the person is operating a vehicle upon a highway and the person turns the vehicle right or left when:
> ". . . .
> "(b) The person fails to give an appropriate signal continuously during not less than the last 100 feet traveled by the vehicle before turning."

*State v. Bea*, 318 Or. at 225. A second Oregon statute, former ORS § 811.400

(1983), declared:

> "(1) A person commits the offense of failure to use an appropriate signal for a turn, lane change or stop if the person is operating a vehicle that is turning, changing lanes, stopping or suddenly decelerating and the person does not make the appropriate signal under ORS 811.395 [describing hand signals and signal lights]."

*State v. Bea*, 318 Or. at 226. Neither statute contained the words "when required."

The Oregon Court of Appeals, in *State v. Bea*, concluded that former ORS 811.400(1), relating to signaling when "turning," did not apply to Randall Bea's action because, when he went left from Kerby Avenue onto Sumner Street, he did not deviate from his presumed course of travel. He went in the only direction he could proceed. The court thereby reversed Bea's convictions, since the officer had no grounds to stop his travel.

The Oregon Supreme Court reversed the state Court of Appeals in *State v. Bea*. The Supreme Court noted that neither ORS 811.335 nor former ORS 811.400 defined what driving maneuver constitutes a "turn." The court applied the ordinary meaning of the word "turn," which includes the action that occurs when a vehicle arrives at the juncture of two streets, changes its direction of travel, and changes from one course of street to another. David Brown's appeal does not concern the meaning of the word "turn."

No. 35304-4-III

LAWRENCE-BERREY, C.J. (dissenting) — A court's fundamental objective when interpreting a statute is to determine and give effect to the legislature's intent. *State v. Larson*, 184 Wn.2d 843, 848, 365 P.3d 740 (2015). The majority journeys to other states to ascertain our legislature's intent. No such journey is required when a plain meaning analysis of RCW 46.61.305 results in only one reasonable interpretation. For this reason, I dissent.

This court is asked to determine whether RCW 46.61.305 requires a person to signal before turning from one road onto another road. RCW 46.61.305 states:

> **When signals required—Improper use prohibited.** (1) No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal *in the manner hereinafter provided.*
> (2) A signal of intention to turn or move right or left *when required* shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

(Second emphasis added.)

"We look first to the plain language of the statute as '[t]he surest indication of legislative intent.'" *Larson*, 184 Wn.2d at 848 (quoting *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010)). To effect legislative intent, we read the statute as a whole and harmonize its provisions by reading them in context with related provisions. *Segura v. Cabrera*, 184 Wn.2d 587, 593, 362 P.3d 1278 (2015).

If the plain language is unambiguous, subject to only one reasonable interpretation, our inquiry ends. *State v. Velasquez*, 176 Wn.2d 333, 336, 292 P.3d 92 (2013). A statute is not ambiguous merely because multiple interpretations are conceivable. *Id.* When the plain meaning of statutory language is unambiguous, we do not use secondary tools of construction. *Id.*

The State argues that subsections (1) and (2) can be harmonized by reading them in context with one another. I agree. The above italicized words make clear that subsection (1) explains *when* signaling is required, and subsection (2) explains the *manner* of signaling. Subsection (1) states that signaling is required when a person "turn[s] a vehicle or move[s] right or left upon a roadway." RCW 46.61.305(1). Subsection (2) states that the manner of signaling is "continuously during not less than the last one hundred feet traveled by the vehicle before turning." RCW 46.61.305(2). Reading the two provisions in context, there is no other reasonable interpretation.

Here, David Brown failed to signal before he turned from one road onto another road. I would conclude that Mr. Brown violated RCW 46.61.305 and that Trooper Mason Acheson had authority to conduct a reasonable stop.

Although this is all that needs to be said, an additional rule for giving statutory language its plain meaning also is satisfied by this construction. The additional rule requires that we "'construe statutes [so] that all of the language is given effect.'" *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). My

2

proffered construction does give meaning to the statutory phrase "when required."

"When required" refers back to subsection (1). Although this meaning gives the phrase

less importance than what the majority gives it, the code drafters wrote that the phrase "is

not important." Majority at 10. When the code drafters themselves write that a phrase is

unimportant, legislative intent is effected by giving less import to the unimportant.

RCW 46.61.305(1) does prohibit turning or moving a vehicle when it cannot be

done with reasonable safety. This prohibition concerns *when* one may turn, not when

signaling is required. By conflating the two concepts, the majority reads words into the

statute that are not there.

Lawrence-Berrey, C.J.