**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 6, 2022**

# In the Court of Appeals of Georgia

A22A0422. THE STATE v. MIDDLETON.

DILLARD, Presiding Judge.

The State appeals the trial court's grant of Patrick Middleton's motion to suppress evidence obtained during a traffic stop resulting in his arrest on charges of unlawful possession of a controlled substance and unlawful possession of drug-related objects. Specifically, the State contends the trial court erred in concluding that because the municipal law enforcement officer initiated the traffic stop of Middleton's vehicle outside of the municipality's boundaries, the officer had no jurisdiction; and, thus, the officer was not engaged in the lawful discharge of her official duties at the time of the search and subsequent arrest. For the reasons set forth *infra*, we agree and therefore reverse the trial court's ruling.

Viewed in the light most favorable to the trial court's ruling,[1] the record shows that shortly after 8:00 a.m. on February 15, 2020, Officer Amanda Graw of the Kingsland Police Department was patrolling Interstate 95 just outside of Kingsland, when she observed a silver sedan fail to maintain its lane several times. As a result, Officer Graw initiated a traffic stop. And upon making contact with the driver (whom she identified as Middleton from his driver's license), Officer Graw noticed a strong marijuana odor emanating from the vehicle. She then asked Middleton to exit the vehicle, at which point she conducted a pat-down search. Thereafter, she began searching the vehicle and asked Middleton if it contained any marijuana. Middleton replied that it did not, and claimed the odor was from him smoking marijuana the previous day. A moment later, Officer Graw found several pills—later determined to be alprazolam[2]—wrapped in plastic, and a small grinder containing marijuana residue. By that time, another Kingsland police officer arrived, and during a more thorough search of Middleton's person, the second officer found a small digital scale.

---

[1] *See, e.g.*, *State v. Dykes*, 345 Ga. App. 721, 721 (815 SE2d 106) (2018).

[2] Alprazolam—commonly known as Xanax—is a schedule IV controlled substance. *See* OCGA §§ 16-13-28 (a) (1); 16-13-30 (a).

Subsequently, Officer Graw arrested Middleton on charges of unlawful possession of a controlled substance and unlawful possession of drug-related objects. Middleton filed a motion to suppress the evidence obtained as a result of the traffic stop, arguing that because Officer Graw was a Kingsland police officer, she had no jurisdiction to initiate a traffic stop for a traffic violation occurring outside of the Kingsland city limits. The trial court conducted a hearing on the motion, which began with the State stipulating that the traffic violation and subsequent stop occurred in unincorporated Camden County, and thus, outside the Kingsland city limits. But during the hearing, Officer Graw testified that—in addition to being a police officer for the City of Kingsland—she had been deputized by the Camden County Sheriff's Office in 2013 and, therefore, had authority to make arrests within the county. Nevertheless, two weeks after the hearing, the trial court issued an order granting Middleton's motion to suppress, finding that Graw was outside of her jurisdiction when she initiated the traffic stop, and thus, the ensuing search and arrest were unlawful. This appeal by the State follows.

In its sole enumeration of error, the State contends the trial court erred in concluding that because Officer Graw initiated the traffic stop of Middleton's vehicle outside the Kingsland city limits, she had no jurisdiction and, thus, was not engaged

3

in the lawful discharge of her official duties at the time of the search and subsequent arrest. We agree.

In reviewing the trial court's ruling on a motion to suppress, we generally must "(1) accept a trial court's findings unless they are clearly erroneous, (2) construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court, and (3) limit its consideration of the disputed facts to those expressly found by the trial court."[3] But we review *de novo* the trial court's "application of law to the undisputed facts."[4] So, when, as here, the facts are for the most part undisputed,

---

[3] *State v. Jacobs*, 342 Ga. App. 476, 477 (804 SE2d 132) (2017) (punctuation omitted); *see Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015) (holding that it is generally for the trial court to determine the facts in ruling on a motion to suppress evidence and, thus, an appellate court generally must (1) accept a trial court's findings unless they are clearly erroneous, (2) construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court, and (3) limit its consideration of the disputed facts to those expressly found by the trial court).

[4] *Jacobs*, 342 Ga. App. at 477 (punctuation omitted).

"we owe no deference to the trial court's legal conclusions."[5] Bearing these guiding principles in mind, we turn to the State's specific claim of error.

As previously noted, Middleton successfully argued below that Officer Graw—a Kingsland police officer—was not engaged in the lawful discharge of her official duties when she initiated a traffic stop for a violation that indisputably occurred outside of the Kingsland city limits. In support of that argument, Middleton—and the trial court in its order—cited OCGA § 40-13-30, which provides:

> Officers of the Georgia State Patrol and any other officer of this state or of any county or municipality thereof having authority to arrest for a criminal offense of the grade of misdemeanor shall have authority to prefer charges and bring offenders to trial under this article, provided that *officers of an incorporated municipality shall have no power to make arrests beyond the corporate limits of such municipality unless such jurisdiction is given by local or other law*.[6]

---

[5] *Id.*; *see Hughes*, 296 Ga. at 750 (2) ("Although we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts."); *Clay v. State*, 290 Ga. 822, 823 (1) (725 SE2d 260) (2012) ("Although we defer to the trial court's findings of disputed facts, we review de novo the trial court's application of the law to the facts.").

[6] (Emphasis supplied).

5

Additionally, we have explained that OCGA § 40-13-30 "specifically limits the arrest powers of *municipal* officers."[7] Furthermore, the Constitution of the State of Georgia "expressly prohibits a municipality from exercising its police protection services outside its own boundaries except by contract with the affected county or municipality."[8]

But as noted *supra*, in this matter, Officer Graw testified during the hearing on Middleton's motion that she was deputized by the Camden County Sheriff's Office several years prior to the subject traffic stop. And importantly, county police—including the county sheriff—"have general police power to investigate and make arrests[.]"[9] Furthermore, a deputy sheriff is "an agent of the sheriff and in

---

[7] *Bacon v. State*, 347 Ga. App. 689, 692 (2) (820 SE2d 503) (2018); *see Thornton v. State*, 310 Ga. 460, 464 (2) (851 SE2d 564) (2020) (noting that OCGA § 40-13-30 restricts the ability of municipal officers from making arrests "beyond the corporate limits of their respective municipalities unless such jurisdiction is given by local or other law" (punctuation omitted)).

[8] *Bacon*, 347 Ga. App. at 693 (2); *see* Ga. Const. Art. IX, § II, Para. III (b) (2) ("Unless otherwise provided by law . . . [n]o municipality may exercise any of the powers listed in subparagraph (a) of this Paragraph [e.g., police protection] or provide any service listed therein outside its own boundaries except by contract with the county or municipality affected.").

[9] *Perry v. State*, 204 Ga. App. 643, 644 (2) (419 SE2d 922) (1992); *see Chaffin v. Calhoun*, 262 Ga. 202, 203 (415 SE2d 906) (1992) (explaining that duties of the sheriff are defined in OCGA § 15-16-10, and include not only the enumerated duties

effecting the proper discharge of his duties is empowered with the same duties and powers."[10] Nevertheless, in a footnote to its order granting Middleton's motion to suppress, the trial court acknowledged that Officer Graw had been deputized but noted that it was "not persuaded that Officer Graw's 2013 deputization by the [sheriff] to act as an agent of the CCSO as part of her riding with CCSO deputies at the time changes its analysis, especially where the State has failed to introduce evidence as to the scope and/or content of said deputization." But this statement is belied by the record, as Graw explicitly testified—and without contradiction—that, having been deputized, she was authorized to make arrests within Camden County. As a result, the court's finding that the State "failed to introduce evidence" as to the scope of deputization is clearly erroneous and we owe it no deference.[11]

---

such as maintaining the jail and serving warrants, but also those duties that "necessarily appertain to his office," such as the power to make arrests, to maintain the peace, and to enforce the law); *see also Elder v. Camp*, 193 Ga. 320, 322-23 (5) (18 SE2d 622) (1942) (noting that a sheriff has the right and duty to enforce the laws enacted for the protection of the lives, persons, property, health, and morals of the people).

[10] *Veit v. State*, 182 Ga. App. 753, 756 (2) (357 SE2d 113) (1987).

[11] *See supra* note 3.

Additionally, although Middleton argues the traffic stop was nevertheless unlawful because Officer Graw was not working with the sheriff's office at that particular moment, if acting within their jurisdiction (as Officer Graw was here), "all law enforcement officers have the general duty to enforce the law and maintain the peace[, and] [t]hey carry this duty twenty-four hours a day, on and off duty."[12] So, given these circumstances, Officer Graw was authorized to initiate a traffic stop when she observed Middleton's vehicle failing to maintain its lane of travel.[13] Accordingly, the trial court erred in granting Middleton's motion to suppress evidence obtained as a result of the traffic stop, and therefore, we reverse that ruling.

*Judgment reversed. Mercier and Markle, JJ., concur.*

---

[12] *Helton v. State*, 284 Ga. App. 777, 778 (1) (644 SE2d 896) (2007) (punctuation omitted). *Cf. Zilke v. State*, 299 Ga. 232, 234-36 (787 SE2d 745) (2016) (holding that campus police officer only had statutory authority to make arrests on campus and within 500 yards of campus, and statute generally allowing law-enforcement officer to arrest person accused of motor vehicle violation by citation did not enlarge the officer's territorial boundaries and, thus, did not confer ability to make custodial arrest for violation outside of such boundaries).

[13] *See Perry*, 204 Ga. App. at 644 (2) (holding that a detective who was employed by the sheriff's office could make an arrest for a crime committed in his presence); *see also State v. Giangregorio*, 181 Ga. App. 324, 325 (1) (352 SE2d 193) (1986) (noting, in a case involving a joint drug task force operating at Hartsfield International Airport which is located in Clayton County, if a the DeKalb County officer had been sworn as a deputy in Clayton County, his arrest of suspect would have been de jure (Beasley, J., concurring specially)).